OPINION OF THE COURT
Meyer, J.
Direct mail solicitation of potential clients by lawyers is constitutionally protected commercial speech which may be regulated but not proscribed. The Appellate Division’s contrary holding, predicated upon an artificial distinction between solicitation and advertising, should, therefore, be reversed, without costs.
The appeal comes before us as of right, on constitutional grounds. It is from an order of the Appellate Division, made in a disciplinary proceeding, which confirmed the report of the referee that respondents-appellants Koffler and Harrison (hereafter respondents) had violated section 479 of the Judiciary Law and DR 2-103 (A) of the Code of Professional Responsibility, but which, finding that respondents had apparently acted in good faith, imposed no sanction.[1]
The proceeding, begun by the Joint Bar Association Grievance Committee, Tenth Judicial District (hereafter Committee), charged that respondents, in violation of section 479 of the Judiciary Law and the Code of Professional Responsibility, caused to be mailed between August 24, 1977 and October 24, 1977, to approximately 7,500 individual real property owners a letter on respondents’ legal stationery which solicited the addressees to use respondents’ services in connection with the sale of real property, and during the same period caused to be mailed to a number of real estate brokers a letter on respondents’ legal stationery soliciting the brokers to refer clients to respondents in connection with the purchase or sale of real property. The texts of the two letters are set forth in the Appellate Division’s opinion (70 AD2d 252, 254-255) and need not be repeated here. The Appellate Division noted (id., at p 256) respondent Koffler’s testimony that the results of their Newsday advertisement, reproduced as part of their letter, '■ 'were negligible’ ” and that respondents " 'felt if we could direct our advertising specifically at the person who was *144 interested in the sale of a house, — for example, instead of just advertising in a paper with a general circulation — we might be able to get better results and do the mass production idea that we had.’ ” He also testified that the firm did about 200 closings at the fee stated in the letter.
By their answer and by stipulation made before the referee respondents admitted sending the letters and the text of them. The answer, however, alleged as a defense that both facially and as applied the Judiciary Law and the code violate the First and Fourteenth Amendments to the United States Constitution, that respondents acted in good faith reliance on the decision of the Supreme Court in Bates v State Bar of Ariz. (433 US 350), decided June 27, 1977, and that they have acted and are continuing to act in compliance with the guidelines for advertising adopted by the New York State Bar Association and approved by the Appellate Division, Second Department.
 Since overbreadth analysis is not applicable to commercial speech (Ohralik v Ohio State Bar Assn., 436 US 447, 462, n 20; People v Mobil Oil Corp., 48 NY2d 192, 199), respondents are limited to contesting the invalidity of the statute and code provisions as applied to them. The referee concluded that respondents had violated the Judiciary Law and DR 2-103 (A) of the code because their communications constituted constitutionally unprotected solicitation rather than advertising. In so finding he made no distinction between the letter to homeowners and the letter to brokers, nor had any distinction between them been suggested by the Committee’s presentation at the hearing before the referee. Confirming, the Appellate Division, without reaching the question whether all mailing to nonclients is proscribed, held the' statute and DR 2-103 (A) "constitutional insofar as they ban solicitation of legal business by mail as well as in person” (70 AD2d 252, 274) but, except for a passing footnote reference to the potential conflict of interest that could be involved in the solicitation of real estate brokers to refer clients to respondents, likewise did not differentiate between the two letters. For the reasons hereafter set forth we conclude that neither statute nor code provision can constitutionally prohibit advertising of attorneys’ services by direct mail addressed to potential clients. We do not, however, pass upon direct mail solicitation of clients through materials addressed to third persons, preferring to leave determination of that question, distinguish *145 able as it is in a number of ways from direct client solicitation by letter,[2] for a matter in which a more complete record has been made and there has been more extensive consideration by the Appellate Division, in which is vested primary jurisdiction in matters of discipline.
While prohibitions against solicitation of legal business by or for attorneys have ancient roots (Note, Attorney Solicitation of Clients, 7 Hofstra LR 755, 757), their constitutionality has come into question only recently. The proscriptions the Committee seeks to enforce against respondents are contained in section 479 of the Judiciary Law, which read in 1977 and still reads: "It shall be unlawful for any person or his agent, employee or any person acting on. his behalf, to solicit or procure through solicitation either directly or indirectly legal business, or to solicit or procure through solicitation a retainer, written or oral, or any agreement authorizing an attorney to perform or render legal services, or to make it a business so to solicit or procure such business, retainers or agreements”, and section DR 2-103 (A) of the Code of Professional Responsibility, which as it read at the time respondents’ letter to homeowners was circulated, provided: "A lawyer shall not recommend employment, as a private practitioner, of himself, his partner, or associate to a non-lawyer who has not sought his advice regarding employment of a lawyer.”[3] Since to recommend one’s self for employment is to *146 solicit employment, the two provisions are, at least in the context of the present proceeding, coextensive.
We disagree, however, with the Appellate Division’s conclusion that the solicitation that those provisions condemn can be differentiated from constitutionally protected commercial speech simply by categorizing the former as solicitation and the latter as advertising. The Supreme Court has said so in so many words, overruling in N. A. A. C. P. v Button (371 US 415, 429) the contention that "solicitation” is wholly outside the area of First Amendment protection, and declaring in Bigelow v Virginia (421 US 809, 826) that: "Regardless of the particular label asserted by the State — whether it calls speech 'commercial’ or 'commercial advertising’ or 'solicitation’ — a court may not escape the task of assessing the First Amendment interest at stake and weighing it against the public interest allegedly served by the regulation.” (See, also, Matter of Madsen, 68 Ill 2d 472, 478.)
Semantically, of course, there is a difference. Not all solicitation is advertising, though all advertising either implicitly or explicitly involves solicitation. To "solicit” means to move to action, to endeavor to obtain by asking, and implies personal petition to a particular individual to do a particular thing (Webster’s Third New International Dictionary, p 2169; Black’s Law Dictionary [5th ed], pp 1248-1249), while "advertising” is the calling of information to the attention of the public, by whatever means (Webster’s, p 31; Black’s, p 50). To outlaw the use of letters, the content of which does not violate DR 2-101, addressed to those most likely to be in need of legal services, because in addition to "advertising” the nature of the service and its price the letters implicitly or explicitly suggest employment of the writer to perform those services, ignores the strong societal and individual interest in the free dissemination of truthful price information as a means of assuring informed and reliable decision making in our free enterprise system, about which both the Supreme Court (Bates v State Bar of Ariz., 433 US 350, 364, supra) and we (People v Mobil Oil Corp., 48 NY2d 192, 200, supra) have had occasion to comment, and can only be productive of confusion for the profession (see Freedman, Lawyers’ Ethics in an Adversary System, ch 10). To do so, moreover, is to suggest that there is necessarily something improper about an attorney’s desire to earn a fee, and that there is something different about the legal profession that makes direct mail advertising improper *147 though it would not be for other businesses or professions and though indirect forms of advertising are not improper even for the legal profession, notwithstanding the contrary indications in the writings of both the Supreme Court (Bates, supra, at pp 368-369, 371-372; Pittsburgh Press Co. v Human Relations Comm., 413 US 376, 385) and of our court (Matter of Gordon, 48 NY2d 266, 272).
Turning, then, to consideration of the provisions in question in the context of the case law on commercial speech, we note that the Supreme Court of Kentucky has upheld letter solicitation of clients in real estate transactions (Kentucky Bar Assn. v Stuart, 568 SW2d 933 [Ky]; see, also, the reference to "mail circulations” in the concurring in-part opn of Mr. Justice Powell in Bates v State Bar of Ariz., 433 US 350, 402, n 12, supra), but that none of the United States Supreme Court’s pronouncements in cases concerned with lawyer-client speech is directly in point. Matter of Primus (436 US 412) dealt with lawyer-client speech but at the political and associational level, not here involved, and while it held protected letter solicitation of a prospective client, did so on the basis (see 436 US, at p 431) of the more generous protection accorded such speech. Bates v State Bar of Ariz. (supra) though it held protected price advertising by lawyers, did so with respect to the more indirect method of newspaper advertising. Ohralik v Ohio State Bar Assn. (436 US 447, supra), while it held constitutional a restriction on in-person solicitation of accident victims while in the hospital, did so on the possibility of overreaching inherent in such a person-to-person confrontation.
Those cases are nonetheless helpful in the determination of the instant appeal, as is the more structured analysis for commercial speech cases stated by the Supreme Court in its most recent opinion on the subject, Central Hudson Gas v Public Serv. Comm. (447 US 557). In that case the court defined commercial speech as “expression related solely to the economic interest of the speaker and its audience” (447 US, at pp 561-562), a definition within which respondents’ letter to homeowners comfortably fits, and posited a four-part analysis (447 US, at p 566): (1) Is it misleading or related to unlawful activity? (2) Are the Government interests sought to be protected substantial? (3) How directly does the regulation advance those interests? (4) Is there a less restrictive alternative?
*148 The Committee did not claim in its petition that respondents’ letter was either misleading or related to unlawful activity. At the hearing before the referee, its counsel rested after putting on record the stipulation by which respondents’ sending of the letters and the content of them was put in evidence and cross-examined respondents only to show that they were commercially motivated. The Appellate Division (70 AD2d, at p 274, n 5) characterized as a questionable tactic the statement in the letter that " 'We understand that you are selling your home’ ”, noting that the mailing of 7,500 such letters "would apparently indicate that they [respondents] had no such understanding at all”, but made no finding that the letter was misleading, as, indeed, on the record it could not have, there being nothing in the record to indicate how the list of addressees was compiled by respondents. We conclude that the letter to homeowners was neither misleading nor did it relate to unlawful activity.[4]
The interests sought to be protected are identified in the Appellate Division opinion (70 AD2d, at p 274) and in the Committee’s brief as the potentials[5] for deception, for invasion of privacy, for overcommercialization of the profession and for conflict of interest. Bates, Ohralik and Primus establish that these are legitimate and important State interests.
There is, however, obvious tension between these interests and the societal interest, already noted, in the free dissemination of truthful price information in order to assure "informed and reliable decisionmaking” (Bates, 433 US 350, 364, supra). It is in the light of that tension that the directness of relation of regulation to purpose is to be considered. So considered, the only interest concerning which it can be said that there is a sufficiently direct relationship is prevention of deception. The Committee does not suggest how conflict of interest can arise through direct mail client solicitation or how the proscription of such solicitation will "help to avoid situations where the lawyer’s exercise of judgment on behalf of a client will be clouded by his own pecuniary self-interest”, as its brief sug *149 gests, and no such possibility occurs to us (cf. Note, 81 Yale LJ 1181, 1187).
The overcommercialization potential of direct mail advertising is now sufficiently controlled by the Appellate Division’s rule 691.12 and DR 2-101, the constitutionality of which have not been questioned in this proceeding. Though those controls were not in effect when respondents mailed their letters, the connection between professional standards (as distinct from the traditions of the profession, cf. Bates, supra, at p 371) and direct mail advertising of the nature and cost of legal services offered is too indirect to sustain proscription of such advertising (cf. Central Hudson Gas, supra, 447 US, at pp 563-564; Terry v California State Bd. of Pharmacy, 395 F Supp 94, 106, affd 426 US 913). The more so is this true in light of Bates’ conclusions that “competition through advertising is ordinarily the desired norm” (at p 378, n 35) and that restraints on advertising “are an ineffective way of deterring shoddy work” (at p 378).
Invasion of privacy and the possibility of overbearing persuasion, both of which were condemned in Ohralik and which could conceivably be present in telephone solicitation as the Appellate Division suggests (70 AD2d, at p 273), are not sufficiently possible in mail solicitation to justify banning it. As the Supreme Court put it in. Consolidated Edison v Public Serv. Comm. (447 US 530, 542-543), a recipient of a lawyer’s letter “may escape exposure to objectionable material simply by transferring * * * [it] from envelope to wastebasket.” It is not enough to justify a ban that in some situations (marital discord, a death in the family) a solicitation letter may be offensive to the recipient, or that some people may fear receiving a lawyer’s letter, or to suggest that there may be some who by reason of frequent receipt of lawyer’s solicitation letters may discard without opening a mailed summons.
The potential for deception is a different matter, for unlike newspaper, television or radio advertising, direct mail goes only to the addressee. The temptation for deception is, therefore, greater, and the probability of exposure less, than for those more public media. Enforcement of the State’s strong interest that “the stream of commercial information flow cleanly as well as freely” (Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 772) and that, to that end, there be effective oversight of members of the Bar is less *150 probable, therefore, with respect to mail than to media advertising (see Ohralik, 436 US 447, 466-467, supra; Allison v Louisiana State Bar Assn., 362 So 2d 489, 496 [La]).
That there is a substantial State interest to which the regulations are closely related does not end the inquiry, however, for complete suppression is not constitutional if the State’s interest can be adequately protected by more limited regulation. That it can be seems hardly open to question, in view, for example, of the filing requirement for retainer statements now contained in the Appellate Division’s rule 691.20 (22 NYCRR 691.20). That similar filing of a solicitation letter assures the public ample protection was the conclusion of the Supreme Court of Kentucky (Kentucky Bar Assn. v Stuart, 568 SW2d 933, 934 [Ky], supra).[6]
Our discussion so far assumes that the ban against solicitation is a restriction as to content or subject matter, rather than manner of communication. The Supreme Court has, however, differentiated between the two applying the criteria discussed above to content restriction but upholding a regulation of time, place or manner if reasonable, if it serves a significant governmental interest and if it leaves ample alternative channels for communication (Consolidated Edison v Public Serv. Comm., 447 US 530, 535-536, supra; Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 771, supra).
Since that categorization gives rise to some problems in analysis (cf. Reich, Preventing Deception In Commercial Speech, 54 NYU LR 775), we note that the result would not differ were we to apply the manner rather than the content criteria. The Committee argues that "ample alternative channels” are left open because nothing in the letter, with the exception of the personal references, was unsuited to communication in a newspaper, magazine, advertising supplement, telephone directory, radio or television advertisement. There is, however, nothing to show what the comparative costs of the suggested alternatives is or whether the more direct and discursive letter form is not more effective, and thus no basis for concluding that the alternatives are "ample”. There is, moreover, respondent Koffler’s testimony that at least the newspaper advertising which they tried first was ineffectual, *151 the response being negligible, whereas they were retained for some 200 closings as a result of their letter to homeowners. Moreover, unless the reasonableness of regulation is to be considered in the abstract, a regulation which completely proscribes use of direct mail when the State’s purpose can readily be achieved by a less restrictive alternative cannot be said to be reasonable.
Whether considered as a restriction on the content of, or a regulation of the manner of, commercial speech, the restrictions in question may not constitutionally proscribe direct mail advertising of the availability of particular legal services and the cost of those services.
For the foregoing reasons, the order of the Appellate Division should be reversed, without costs, and the proceeding dismissed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.

. Absence of a sanction does not affect respondents’ right of appeal from the confirmed finding of violation (CPLR 5601, subd [b], par 1).

. For example, third person mailings will, if their ends are to be achieved, almost always involve in-person solicitation by the intermediary, and are, therefore, much closer to speech of the type Ohralik v Ohio State Bar Assn. (436 US 447) has held can be proscribed (cf. Matter of State Bar Grievance Administrator v Jacques, 407 Mich 26, 51 [Coleman, Ch. J., dissenting]).

. On April 29, 1978, DR 2-103 was amended. Subdivisions (A) and (F) of the amended provision read as follows:
"(A) A lawyer shall not solicit employment as a private practitioner of himself or herself, a partner or an associate to [sic] a person who has not sought advice regarding employment of a lawyer in violation of any statute or court rule. Actions permitted by DR 2-104 and advertising in accordance with DR 2-101 shall not be deemed solicitation in violation of this provision.”
"(F) Advertising permitted under DR 2-101 shall not be deemed in violation of any provision of this Disciplinary Rule.” On March 1, 1978, the Appellate Division, Second Department, implemented its rule 691.22, originally filed in 1976 (22 NYCRR 691.22). The rule is entitled "Advertising and publicity by attorneys” and, in pertinent part, permits public communications that are not false or deceptive and that do not include puffery or claims concerning quality of services that cannot be measured or verified, and requires that advertised fees be maintained for specified periods. DR 2-101, referred to in DR 2-103 (A) and (F), is, except for the substitution of "lawyer” for "attorney”, identical with rule 691.22. When respondents’ letters were sent, however, the guidelines were not in effect.

. Of course, the Committee in seeking to have respondents disciplined for violating the Judiciary Law is, in one sense, urging that respondents acted unlawfully, but that is not the activity (sale of a house) to which the letter related.

. It is the potential that is to be considered in determining constitutionality (Ohralik v Ohio State Bar Assn., 436 US 447, 464, supra), although respondents could not be disciplined unless their "activity in fact involved the type of misconduct at which” the prohibitions in question are directed (Matter of Primus, 436 US 412, 434, supra).

. Our discussion of a filing requirement is, of course, by way of example only and not by way of prescription.