Chief Judge Cooke
(dissenting). I respectfully dissent. A per se prohibition of direct-mail lawyer advertising to real estate brokers cannot be sustained under the First Amendment free speech clause, particularly in view of the Supreme Court’s instruction in this case to reconsider the rule embraced in Matter of Greene (54 NY2d 118) in light of its decision in Matter of R. M. J. (455 US 191).
The majority reasons that direct-mail advertisement of legal services to real estate brokers, regardless of how it is framed, necessarily involves a request by the attorney to the broker to solicit the latter’s prospect to employ the advertising attorney’s services (see Matter of Greene, supra, at p 126). This, in turn, gives rise to an attorney’s potential conflict of interest between the client and the referring broker. This conflict is said to manifest itself and cause injury to the client through “[t]he possibility that the lawyer’s view of marketability of title may be colored by his knowledge that the referring broker normally will receive no commission unless title closes, the improbability that the attorney will negotiate to the lowest possible level the commission to be paid to the broker who is an important source of business for him (or suggest to the client that he do so), [and] the probability that the lawyer will not examine with the same independence that he otherwise would the puffery that the broker has indulged in to bring about the sale” (id., at p 129). In the majority’s view, the appropriate means to obviate these potential harms is an absolute ban on direct-mail lawyer advertising to real estate brokers.
This restriction on the attorney’s constitutional right to advertise (see Matter of R. M. J., 455 US 191, supra; Bates v State Bar of Ariz., 433 US 350; Matter of Kojffler, 51 NY2d 140) is characterized as a reasonable time, place, and manner restriction, rather than a content-based restriction (at pp 234-235; Matter of Greene, 54 NY2d, at pp 126-127) because “[w]holly unrelated to the content of the letter, the proscription is not against the attorney making known to potential clients the availability of his services or even against his doing so through third parties, but against his *238 doing so in a particular manner: through a third party whose interests may be more closely intertwined with those of the attorney than with those of the client.” (At pp 234-235.) As a mere restriction on the manner of speech, the majority argues that the regulation may be sustained under the First Amendment because an attorney has effective alternative means of advertising and the regulation is rationally related to the advancement of the State’s interest in protecting clients against retaining attorneys with a conflict of interest (at pp 235-236; Matter of Greene, supra, at pp 126-127).
The majority’s analysis errs in fundamental respects.
It is true that the State may place restrictions on the time, place, and manner of protected speech so long as such a restriction is reasonable (see Consolidated Edison v Public Serv. Comm., 447 US 530, 536). To be considered a time, place, or manner restriction, however, a restriction “must be ‘applicable to all speech irrespective of content’ ” (id., quoting Erznoznik v City of Jacksonville, 422 US 205, 209). Thus, the government may regulate how, when, or where a message is delivered, but only without reference to the message’s substance (see Grayned v City of Rockford, 408 US 104, 115; Cox v Louisiana, 379 US 536, 554). For example, the State may restrict large street demonstrations to times other than rush hour as a reasonable time and place regulation stemming from its interest in public safety and order (see Cox v Louisiana, supra). Similarly, the State, as a reasonable restriction on the manner of speech, may require that the use of “overamplified loudspeakers” be modulated to protect its interest in public peace (see Grayned v City of Rockford, 408 US 104, 116, supra; Kovacs v Cooper, 336 US 77, 87). Such regulations, to be enforceable, must be, as mentioned, neutral in terms of the content of speech, and “must be narrowly tailored to further the State’s legitimate interest” (Grayned v City of Rockford, supra, at pp 116-117).
Time, place, or manner regulations are evaluated under a less rigorous standard than content-based restrictions (see Linmark Assoc. v Willingboro, 431 US 85, 93). If the former is reasonable, and rationally related to a legitimate State interest, it will be upheld so long as there exist *239 effective alternate means of communication (see Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 771). For a content-based restriction to be sustained, at least with respect to protected, .nonmisleading commercial speech,[1] the State must assert a substantial State interest and the restriction may extend only in proportion to the degree the interest is served (see Matter of R. M. J., supra; Central Hudson Gas & Elec. v Public Serv. Comm., 447 US 557, 566). Moreover, the State must show that there are no less-restrictive means of regulation (Central Hudson Gas & Elec. v Public Serv. Comm., supra, at p 566).
When the State seeks to restrict the time, place, or manner of speech with reference to a particular type of message such a regulation has been held to be an attempt to control content (see Consolidated Edison v Public Serv. Comm., 447 US, supra, at p 537; Erznoznik v City of Jacksonville, 422 US, supra, at p 209; Police Dept. of Chicago v Mosley, 408 US 92, 95). For example, regulations have been struck down as content-based restrictions when they prohibited placing “For Sale” signs on residential property but not signs with other messages (see Linmark Assoc. v Willingboro, 431 US 85, 93-94, supra), prohibited exhibiting movies that are visible from a public street only when the movie contains nudity (Erznoznik v City of Jacksonville, supra), and prohibited inserting messages in utility bills only when the insert addresses a controversial public issue (Consolidated Edison v Public Serv. Comm., supra).
In analyzing the present case, certain basic factors are noted. The subject regulation is plainly content-based. Although, indeed, it regulates a manner of speech, the regulation is not, as the majority contends, “[wjholly unrelated” to the speech’s content. The restriction is invoked solely by reason of the message’s nature — attorney advertising. “That the proscription applies only to one mode of communication * * * does not transform this into a ‘time, place, or manner’ case” (Linmark Assoc. v Willingboro, supra, at p 94).
*240 Moreover, there is no claim here that the advertisement was false or misleading. The message itself was not unlawful. The court is concerned here only with whether a lawyer’s protected right to advertise may be restricted by an absolute ban on direct-mail advertising to real estate brokers.
For the regulation to be consistent with First Amendment protections, “the State must assert a substantial interest and the interference with speech must be in proportion to the interest served. Restrictions must be narrowly drawn, and the State lawfully may regulate only to the extent regulation furthers the State’s substantial interest” (Matter of R. M. J., 455 US 191, 203, supra [citation and n omitted]). It may be assumed that the State’s interest in protecting individuals from retaining attorneys with conflicts of interest is substantial. The issue, therefore, narrows to whether the regulation may be said to reasonably advance this interest and, if so, whether the degree to which the interest is advanced justifies the interference with petitioner’s First Amendment right to advertise.
The State has not established that the problem asserted actually exists or that it has attempted to control the problem through less restrictive means that have failed (cf. Matter of R. M. J., supra, at p 206). This concept that the regulation of lawyer advertising must be related to a State interest and should proceed on a least restrictive path is the import of the Supreme Court’s decision in Matter of R. M. J. (supra). It is true, as the majority points out, that much of that case involved questions of whether the ethical rules of the Supreme Court of Missouri that regulate lawyer advertising were a proper means of protecting against potentially deceptive advertising. But many of the rules prohibited absolutely the inclusion of certain information in advertising (see Matter of R. M. J., supra, at pp 193-195). And, in each instance, the rigid formulation of the State rules were found not sufficiently related to the interests of the State to be upheld (id., at pp 205-206). Of particular relevance to this appeal was the court’s review of a rule that permitted the mailing of professional announcement cards only to “lawyers, clients, former clients, personal friends, and relatives” (id., at p 196). The court *241 would not sustain the rule because no interest or established problem was proffered to justify the limitation, and even assuming any interest existed, there was no indication that that problem could not be attended in a less restrictive means.
The blunt conclusion that all direct-mail lawyer advertisements to brokers necessarily pose a grave potential threat that, in the event that a referral results from the advertisement, the lawyer will not act in the best interests of the client is unsubstantiated. Similarly, the assertion that the complete prohibition of direct-mailings to brokers will mitigate conflicts of interest not otherwise deterred is unreálistic. These points are self-evident and have been made before (see Matter of Greene, 54 NY2d 118, 133-135, supra [Fuchsberg, J., dissenting]). It need only be reiterated here that the rule announced in Matter of Greene (supra) and reaffirmed in this appeal does not advance any substantial State interest.[2]
In any event, the rule as drawn interferes with free speech disproportionately to the interest it purportedly furthers. In the present case, the ban on direct-mail advertisements to brokers is complete. It is imposed irrespective of whether the intent of the advertisement, as indicated by its text, is to seek the referral of clients or is merely to give notice of the availability of the lawyer’s services (at p 232, n 1; Matter of Greene, 54 NY2d 118, 126, supra). In the majority’s view, the lawyer’s request for referral is a “necessary implication” of any advertisement sent to a broker, whether it be a mere notice of the opening of a law office (see Matter of R. M. J., 455 US, at p 206) or a neutral statement of the services provided by a law office or lawyer. To the extent that the rule does not differentiate between (1) advertisements that relate solely to disseminating neutral information and (2) advertisements that intimate that the broker should intercede as an intermediary and actively solicit on behalf of the lawyer, it constitutes an unjustified imposition on a lawyer’s right to *242 advertise (see Matter of R. M. J., supra; Matter of Primus, 436 US 412, supra; Bates v State Bar of Ariz., 433 US 350, supra). Moreover, any asserted interest in mitigating potential conflicts of interest in the attorney-client relationship would be as adequately served by the less restrictive means of, for example, reviewing mailings to brokers to ensure they do not include such intimations (see Matter of R. M. J., supra; Central Hudson Gas & Elec. v Public Serv. Comm., 447 US 557, 566, supra).
Accordingly, the order of the Appellate Division should be reversed and the petition dismissed.

. Content-based restrictions on noncommercial speech will be sustained “only in the most extraordinary circumstances” (Bolger v Youngs Drug Prods. Corp., 463 US.— , — , 103 S Ct 2875, 2879 [n omitted]).

. It is noteworthy that, as a general matter, attorneys need not decline to represent a client who has been referred by a broker (see, generally, DR 2-105, DR 2-109, DR 5-101) nor are they proscribed from placing nonmisleading advertisements in publications whose primary readership may be real estate brokers (see, generally, DR 2-100 — 2-101).