GRIEVANCE COMMITTEE FOR THE HARTFORD-NEW BRITAIN JUDICIAL DISTRICT *v.* JOSEPH J. TRANTOLO, JR., ET AL.
(10774)

SPEZIALE, C. J., PETERS, PARSKEY, GRILLO and MENT, Js.

28

Argued October 5, 1983—decision released January 3, 1984

*Maxwell Heiman,* with whom, on the brief, was *William J. Tracy, Jr.,* for the appellants (defendants).

*Philip R. Dunn,* grievance committee counsel, with whom were *Arnold M. Schwolsky,* assistant state's attorney, and *John M. Bailey,* state's attorney, for the appellee (plaintiff).

SPEZIALE, C. J. This case involves the same parties as a case also decided this date. *Grievance Committee*

v. *Trantolo,* 192 Conn. 15, 470 A.2d 228 (1984). The defendants appeal from the judgment of the trial court holding the defendants in violation of the Code of Professional Responsibility and contend that their actions were constitutionally protected. Because we find that the defendants have violated no constitutionally permissible rule, we find error.

The case encompasses two separate incidents. On April 7, 1978, the defendants, attorneys Joseph Trantolo and Vincent Trantolo, held an open house in connection with the opening of "The Law Clinic of Trantolo & Trantolo." Printed announcements previously had been mailed to approximately twenty-five Hartford area realtors, at least some of whom had no professional or personal relationship with the defendants. The mailing included a brochure entitled "A Message to Our Clients" explaining the nature of the clinic, its method of operation, the types of matters that it handled, and a schedule of fees charged for certain specific kinds of legal services.

On May 1, 1978, the Trantolos published a notice in a Hartford area newspaper that prominently displayed the following quotation by John Locke: "The end of law is not to abolish or restrain, but to preserve and enlarge freedom; for in all the states of created beings capable of laws, where there is no law, there is no freedom."[1] The following appeared below the printed quotation: "The Law Clinic of Trantolo & Trantolo Salutes Law Day, May 1, 1978."

On January 16, 1981, the plaintiff filed a substituted complaint alleging professional misconduct by the

---

[1] This quotation comes from Locke's Second Treatise of Government, § 57 (1690).

defendants.[2] On April 22, 1981, the trial court found that the mailing of brochures and the invitation to an "open house" constituted solicitation in violation of Disciplinary Rule 2-103 (C)[3] (hereinafter DR 2-103 (C)) and that the Law Day statement violated Disciplinary Rule 2-101 (B)[4] (hereinafter DR 2-101 (B)) and Ethical Con-

[2] Pursuant to its authority under Practice Book § 27B, the grievance committee had conducted a hearing on May 8, 1978, to consider the actions of the defendants and then decided to present the case to the Superior Court. See General Statutes § 51-90 (b).

[3] DR 2-103 (C) provides in relevant part: "A lawyer shall not request a person or organization to recommend or promote the use of his services or those of his partner or associate, or those of any other lawyer affiliated with him or his firm, as a private practitioner . . . ."

[4] DR 2-101 (B) provides:

"In order to facilitate the process of informed selection of a lawyer by the public, a lawyer may publish, subject to DR 2-103 and any guidelines adopted by the Superior Court, the following information in newspapers, periodicals and other printed publications provided that the information disclosed by the lawyer in such publication complies with DR 2-101 (A) and is presented in a dignified manner:

"(1) Name, including name of law firm and names of professional associates, office addresses and telephone numbers.

"(2) As may be authorized subject to DR 2-105 and DR 2-105A, one or more fields of law in which the lawyer or law firm practices, a statement that practice is limited to one or more fields of law, or a statement that the lawyer or law firm specializes in a particular field of law practice.

"(3) Date and place of birth.

"(4) Date and place of admission to the bar of state and federal courts.

"(5) Schools attended, with dates of graduation, degrees and other scholastic distinctions.

"(6) Public or quasi-public offices.

"(7) Legal authorships.

"(8) Legal teaching positions.

"(9) Memberships, offices, and committee assignments in bar associations.

"(10) Technical and professional licenses.

"(11) Foreign language ability.

"(12) Open prepaid or group legal services programs in which the lawyer has committed himself to participate.

"(13) Whether credit cards or other credit arrangements are accepted.

"(14) Office and telephone answering service hours.

"(15) Fee for an initial consultation.

"(16) Availability upon request of a written schedule of fees and/or an estimate of the fee to be charged for specific services.

siderations 2-9 and 2-10.[5] The court imposed no disciplinary measures due to the uncertainty surrounding the propriety of attorney advertising at the time of the defendants' actions and because it felt the Law Day statement was "an isolated incident."

"(17) Contingent fee rates subject to DR 2-106 (C), provided that the statement discloses whether percentages are computed before or after deduction of costs.

"(18) Range of fees for services, provided that the statement discloses that the specific fee within the range which will be charged will vary depending upon the particular matter to be handled for each client and that the client is entitled without obligation to an estimate of the fee within the range likely to be charged, in print size equivalent to the largest print used in setting forth the fee information.

"(19) Fixed fees for specific legal services, the description of which would not be misunderstood or be deceptive, provided that the statement discloses that the quoted fee will be available only to clients whose matters fall into the services described and that the client is entitled without obligation to a specific estimate of the fee likely to be charged, in print size at least equivalent to the largest print used in setting forth the fee information."

[5] "EC 2-9 The lack of sophistication on the part of many members of the public concerning legal services, the importance of the interests affected by the choice of a lawyer, and prior experience with unrestricted lawyer advertising require that special care be taken by lawyers to avoid misleading the public and to assure that the information set forth in any advertising is relevant to the selection of a lawyer. The lawyer must be mindful that the benefits of lawyer advertising depend upon its reliability and accuracy. Examples of information in lawyer advertising that would be deceptive include misstatements of fact, suggestion that the ingenuity or prior record of a lawyer rather than the justice of the claim are the principal factors likely to determine the result, inclusion of information irrelevant to selecting a lawyer, and representations concerning the quality of service which cannot be measured or verified. Since lawyer advertising is calculated and not spontaneous, reasonable regulation of lawyer advertising designed to foster compliance with appropriate standards serves the public interest without impeding the flow of useful, meaningful, and relevant information to the public."

"EC 2-10 A lawyer should ensure that the information contained in any advertising which the lawyer publishes, or causes to be published, is relevant and is disseminated in an objective and understandable fashion, and would facilitate the prospective client's ability to compare the qualifications of the lawyers available to represent him. A lawyer should strive to communicate such information without undue emphasis upon style and advertising stratagems which serve to hinder rather than to facilitate intelligent selection of counsel."

The defendants appealed to this court claiming that their actions were constitutionally protected under the first amendment to the United States constitution and article first, § 4 of the Connecticut constitution.

## I

### OPEN HOUSE AND BROCHURE

DR 2-103 (C) provides that "[a] lawyer shall not request a person or organization to recommend or promote the use of his services." The trial court found "that the mailing of the announcement together with the brochure indicates that it was the intention of the senders that the recipient recommend or promote the use of their services within the meaning of the Disciplinary Rule." Thus, the court concluded that the disciplinary rule prohibiting solicitation also encompasses and prohibits mailings to third parties.

It is well recognized that attorney advertising is commercial speech entitled to first amendment protection. *In the Matter of R.M.J.,* 455 U.S. 191, 102 S. Ct. 929, 71 L. Ed. 2d 64 (1982); *Ohralik* v. *Ohio State Bar Assn.,* 436 U.S. 447, 98 S. Ct. 1912, 56 L. Ed. 2d 444 (1978); *Bates* v. *State Bar of Arizona,* 433 U.S. 350, 97 S. Ct. 2691, 53 L. Ed. 2d 810, reh. denied, 434 U.S. 881, 98 S. Ct. 242, 54 L. Ed. 2d 164 (1977); see *Grievance Committee* v. *Trantolo,* supra. The United States Supreme Court has defined commercial speech as "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Electric Corporation* v. *Public Service Commission of New York,* 447 U.S. 557, 561, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980). The plaintiff characterizes the mailings as solicitation; the defendants characterize the mailings as advertisements. "[A]ll advertising either implicitly or explicitly involves solicitation." *Koffler* v. *Joint Bar Assn.,* 51 N.Y.2d 140, 146, 412 N.E.2d 927 (1980).

Whether the instant mailing is characterized as an advertisement or as solicitation, it is commercial speech, and entitled to some protection, because it relates "to the economic interests of the speaker." *Central Hudson Gas & Electric Corporation* v. *Public Service Commission of New York,* supra.

Although commercial speech enjoys the protection of the first amendment, the state may impose appropriate restrictions. The question before us is whether DR 2-103 (C), which the trial court held to be a blanket prohibition of mailed solicitation, is an appropriate restriction that passes constitutional muster. We hold that it is not.

A four part analysis determines the validity of state restrictions on commercial speech. *In the Matter of R.M.J.,* supra, 203–204 n.15. The first part of the analysis is a threshold test that determines whether the commercial speech is entitled to any protection under the first amendment. First, the speech in question must concern lawful activity and not be misleading. Only if the speech passes this threshold test do we move on to the remaining parts of the analysis: second, the asserted governmental interest in regulating the speech must be substantial; third, the regulation must directly advance the governmental interest asserted; and fourth, the regulation must be narrowly drawn and must not be more extensive than is necessary to serve that interest. *Central Hudson Gas & Electric Corporation* v. *Public Service Commission of New York,* supra, 566.

In applying this analysis to the present case we note first that there has been no finding, nor does the record indicate, that the mailing of the brochure and open house announcement was unlawful or misleading. We conclude therefore that the mailing passes the threshold

test and is entitled to the protection accorded commercial speech. As to the second part of the analysis, concerning the governmental interest, the plaintiff asserted that the only purpose of the brochure and open house announcement would be to induce the realtors to recommend the Law Clinic of Trantolo & Trantolo to property sellers and buyers. The asserted governmental interests in the prohibition of mailing to such intermediaries are the preservation of the personal relationship between lawyer and client and the prevention of the evils of solicitation. The United States Supreme Court has recognized that these are substantial state interests and may be the basis for a ban on certain in-person solicitations.[6] *Ohralik* v. *Ohio State Bar Assn.*, supra. Third, the regulation prohibiting third party solicitation, DR 2-103 (C), directly advances the state's interest in preventing the evils of solicitation. Under the fourth part of commercial speech analysis, however, this disciplinary rule fails. The plaintiff has not proved that its prohibitive regulation is not more extensive than is necessary to serve its interest. Accordingly, we conclude that the blanket prohibition

---

[6] The trial court found that these mailings constituted solicitation within the meaning of DR 2-103 (C). Even so, the mailings in this case do not present the evils of in-person solicitation that were found in *Ohralik:* "[S]tirring up litigation, assertion of fraudulent claims, debasing the legal profession, and potential harm to the solicited client in the form of overreaching, overcharging, underrepresentation, and misrepresentation." *Ohralik* v. *Ohio State Bar Assn.*, 436 U.S. 447, 461, 98 S. Ct. 1912, 56 L. Ed. 2d 444 (1978). None of the evils found to justify the prohibition of in-person solicitation in *Ohralik* has been found in the case before us. The brochure, listing services and some prices of the law clinic, contained no information that could not have been printed in a newspaper advertisement. The invitation to the open house was designed to announce the opening of the law clinic; the defendants asserted that no one was expected to or in fact did attend the open house. The law clinic initiated no further contact with any of the realtors. The plaintiff has not shown that the mailing was misleading or that persons felt pressured to recommend the defendants.

of mailed solicitations to third parties violates the free speech provisions of the United States constitution and the Connecticut constitution.

We are not saying that the judges of the Superior Court may not regulate solicitations mailed to third parties or otherwise guard against the evils of solicitation. But less intrusive means of satisfying the state's concerns exist. The state could require that a copy of any mailing and the mailing list be filed with the grievance committee. See *Kentucky Bar Assn.* v. *Stuart,* 568 S.W.2d 933 (Ky. 1978); *Koffler* v. *Joint Bar Assn.,* 51 N.Y.2d 140, 412 N.E.2d 927 (1980). Envelopes and contents could be required to be prominently marked to announce that "[t]his is an advertisement." See *In the Matter of R.M.J.,* supra, 206 n.20. Guidelines could be developed to regulate sensitive areas such as funeral homes or hospitals where the potential client may be unduly susceptible to suggestions from figures in authority. See American Bar Association, Model Rules of Professional Conduct (Proposed Final Draft, 1981) Rules 7.2 and 7.3 (b). A third party should have no personal incentive to secure clients for a particular attorney. See note, "Mail Advertising by Attorneys and the First Amendment," 46 Albany L. Rev. 250, 268 n.107 (1981).

Because the plaintiff did not prove that the blanket prohibition of third party mailings was the only feasible method of protecting its interests and therefore not more extensive than necessary, the trial court erred in failing to find these mailings protected as commercial speech.

## II

### Law Day Statement

The trial court found that the May 1, 1978 publication of a John Locke quotation constituted a commer-

cial advertisement. Because the statement gave no information relevant to the selection of an attorney, the court reasoned, it was not entitled to constitutional protection under *Bates* v. *State Bar of Arizona,* supra.[7]

The Law Day statement contained no reference to services that would be provided or fees that would be charged. It contained no address or phone number.[8] It is difficult to see how a quotation from John Locke and a salute to Law Day from a particular legal clinic constitutes a commercial advertisement that serves the economic interest of the speaker. As a salute to a celebrated day in the legal community, we find that the statement more resembled an ideological statement than a commercial advertisement.

Characterization of the statement as "ideological" or "commercial" is unnecessary, however, for as either the statement is protected. If the statement is political or ideological, it naturally enjoys the fullest protection under the first amendment to the United States constitution and article first, § 4 of the Connecticut constitution. Waiver of first amendment rights has never been a precondition of admission to the bar; attorneys are as entitled to public expression of their sentiments as any other citizen. Alternatively, even if the statement is commercial it is entitled to constitutional protection as the plaintiff has asserted no substantial interest in prohibiting such statements. *In the Matter*

[7] The United States Supreme Court in *Bates* noted the public's strong interest in receiving information and held that "advertising by attorneys may not be subjected to blanket suppression." *Bates* v. *State Bar of Arizona,* 433 U.S. 350, 383, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977).

[8] In the same issue of the newspaper, several pages from the Law Day statement, the defendants published an advertisement for their law clinic. Although the trial court in its memorandum of decision alluded to this advertisement and to the fact that the defendants were established advertisers in the newspaper, we do not find that information relevant to this discussion.

*of R.M.J.,* supra, 203. The trial court therefore erred in failing to find the Law Day statement constitutionally protected.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.