UNITED STATES of America; The State of New York, and UDC-Love Canal, Inc., Plaintiffs,

v.

OCCIDENTAL CHEMICAL CORPORATION; Occidental Chemical Holding Corporation; Occidental Petroleum Investment Company; Occidental Petroleum Corporation; the City of Niagara Falls, New York; Niagara County Health Department; and the Board of Education of the City of Niagara Falls, Defendants.

No. CIV–79–990C.

United States District Court, W.D. New York.

April 19, 1985.

U.S. Dept. of Justice, Environmental Enforcement Section, Land and Natural Resources Div., Washington, D.C. (Albert M. Cohen, Washington, D.C., of counsel), and Robert Abrams, Atty. Gen. of the State of N.Y., New York City (Edith Holleman, Asst. N.Y. State Atty. Gen., New York City, of counsel), for plaintiffs.

Wald, Harkrader & Ross, Washington, D.C. (Thomas H. Truitt, Washington, D.C., of counsel), and Phillips, Lytle, Blaine, Hitchcock & Huber, Buffalo, N.Y. (David K. Floyd, and Robert E. Glanville, Buffalo, N.Y., of counsel), for defendants Occidental.

Gellman, Brydges, Schroff & Schweitzer, Niagara Falls, N.Y. (Earl W. Brydges, Niagara Falls, N.Y., of counsel), for defendant City of Niagara Falls.

CURTIN, Chief Judge.

*Order #1*

### I.

This is a dispute which has arisen during the process of taking non-party depositions of former employees of defendant Occidental Chemical Corporation [Occidental]. These depositions relate to activities which took place several years ago and which may be highly relevant to a major environmental lawsuit brought by the federal and state governments against Occidental.

Counsel for Occidental have already provided legal assistance to one former Occidental employee, and the company plans on sending letters to other former employees extending offers to absorb the costs of having Occidental's present counsel provide legal assistance to any ex-worker who is asked to appear for a deposition. The United States, the State of New York, and defendant City of Niagara Falls have asked the court to enter an order prohibiting Occidental's attorneys from representing any former Occidental employee during these discovery proceedings.[1]

Occidental's attorneys in this case are the law firms of Wald, Harkrader & Ross of Washington, D.C., and Phillips, Lytle, Hitchcock, Blaine & Huber of Buffalo, New York. For the reasons stated below, the court will not enjoin these firms from representing former Occidental employees. However, neither Phillips/Wald nor Occidental shall send these people any notice of the offer to retain Phillips/Wald as their attorneys.

### II.

Since the relief sought here is rather sweeping, it is necessary to state the facts in some detail. Non-party depositions of persons who lived or worked at Love Canal in the 1940s and 1950s were commenced in November 1984. Depositions of three former residents were completed in November. On December 10, 1984, counsel met in Niagara Falls, New York, to take the deposition of John W. Gibson, who worked for Occidental for 33 years before retiring in 1980. In the course of his employment with Occidental, Mr. Gibson took part in the disposal of chemical wastes at Love Canal between 1947 and 1952.

December 12, 1984, was the third day of Mr. Gibson's deposition. The day began with questioning by an attorney from the United States Department of Justice. Mr. Gibson testified about various chemical dumping activities for about an hour before Occidental's attorney (David K. Floyd) sug-

---

1. The same relief is requested by a group of individuals who are not parties to the case on this court's docket. These people are plaintiffs in an action pending in New York State Supreme Court (Niagara County). Counsel for the governmental parties are participating in both lawsuits, which are somewhat related in subject matter. Depositions of former Occidental employees are part of the discovery for both ac-

tions. The instant motion was filed in this court, and the parties have apparently agreed (without any direction from this court) to accept this court's decision as the rule governing this matter in both lawsuits. This arrangement has been approved by the Honorable Joseph P. Kuszynski, who is presiding over the state court action.

gested that a recess be taken. Tr. III, p. 263.[2]

When the deposition resumed, Mr. Floyd informed counsel that Mr. Gibson had mentioned during the recess that, in his testimony, he had omitted a detail not material to the present motion. Mr. Floyd suggested that Mr. Gibson offer to correct the omission. The attorney representing the United States agreed to pursue this, but first he wanted to inquire into the conversation Mr. Gibson had with Mr. Floyd during the recess. Floyd claimed that the conversation was privileged, citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). As the lawyers debated this issue, Gibson was asked to leave the room "briefly." The attorneys' inability to resolve the problem raised by the objection prevented Mr. Gibson from returning. The deposition did not resume until almost a month later on January 7, 1985. Tr. III, pp. 263–66.

Floyd stated during the December 12 deposition that he had never advised Gibson about the possibility of obtaining an attorney, and he indicated that Gibson was not his client. Tr. III, pp. 275, 279.

Gibson became a client of the law firms representing Occidental on the morning of January 7, 1985, the day he resumed his deposition testimony. Floyd, who is a member of the Phillips, Lytle firm representing Occidental, stated that it was he who suggested to Gibson that Gibson might utilize the services of Occidental's attorneys during the deposition. Mr. Floyd requested Occidental's assent to the proposition that the corporation absorb the legal costs of having its counsel represent Mr. Gibson at the deposition. Occidental agreed to this. Floyd then offered this arrangement to Gibson, and he accepted. Tr. IV, p. 301.

As the proceedings began on January 7, Floyd announced that he was withdrawing his objection to the inquiry into the conversation he had with Gibson on December 12. This was consistent with what he had stated in a letter he sent to the other attorneys on January 2. However, counsel were surprised when they heard Floyd announce that Gibson was now his client.

The Justice Department lawyer asked Gibson about the conversation he had with Floyd during the recess of the proceedings of December 12. Gibson answered without any objections. He was then asked how the arrangement with Occidental's lawyers had come about. Floyd objected and then advised Gibson that the answer sought was privileged. After he advised Gibson that he could waive the privilege if he wished, Gibson waived his privilege. Tr. IV, pp. 305–08.

Gibson reiterated the substance of what Floyd had previously told counsel. He said that Floyd telephoned him sometime during the week of January 1 and for the first time told him that his firm might represent Gibson during the deposition free of charge. He told Gibson that this had to be approved by Occidental but that such an arrangement would probably be acceptable and said that he could get another lawyer if he wished. Tr. IV, pp. 308–11.

Gibson did not think he "needed" a lawyer. However, "as we went along and ... I thought about that and then when they talked to me, they [told] me that there was a probability that they could represent me so I said, yes, okay. Let's do that." *Id.* at 308.

The attorney-client relationship between Phillips/Wald and Gibson was finalized on the morning of January 7, after Floyd received final approval from Occidental. Floyd handed a letter to Gibson when Gibson gave his final assent to the arrangement. The contents of the letter, written on Phillips, Lytle stationery, are set forth in the margin.[3] Among other things, Gib-

---

2. Numbers following "Tr." and Roman numerals denote the page numbers of the transcript of the Gibson deposition. Five volumes of Mr. Gibson's testimony were filed with the court on February 1, 1985, as Docket Item 214, Vols. I–V.

3. Dear Mr. Gibson:

This letter confirms your retention of our Firm and the Wald, Harkrader Firm in Washington as your personal counsel in conjunction with matters concerning the pending and

son was informed that if the interests of himself and Occidental conflicted, Occidental's attorneys would no longer represent him.

Gibson was questioned further about his agreement with the Phillips/Wald firms. Counsel for New York State brought out the fact that Gibson never told Floyd or anyone else that he needed a lawyer. However, Mr. Gibson had an interesting response to the next question asked by the Assistant Attorney General.

> Q. And you had been through three days of depositions without an attorney, is that right, in December?
>
> A. Not exactly right, I felt as though I was being represented by these people here because they—they represent Occidental Chemicals [sic], the people that I worked for and that I was being treated as a client ... and I was being represented and they would protect my interests if there was a problem that I had to be protected for and that's the way I looked at it.

Tr. IV, pp. 311–312.

Asked if there had been any need for "extra protection," Mr. Gibson said that "I just thought that there was some point in some of the conversations that I needed to get some advice for how to answer these questions." *Id.* at 312.

These remarks by Mr. Gibson are not surprising when it is noted that Floyd appeared with Gibson at a deposition in 1979, when Gibson was an active employee of Occidental.[4] Mr. Gibson emphasized that he had nothing to hide, "was not here to

any future Niagara Frontier landfill litigation against Occidental.

You recognize that we are, at the same time, serving as attorneys for the Hooker/Occidental defendants in that litigation. We see no present conflict in serving as counsel for both you and Hooker/Occidental. Should a conflict arise, it is understood that we would have to terminate our joint representation and would be free to continue as counsel for Hooker/Occidental.

We further confirm that Occidental Chemical Corporation has approved of our joint representation and has agreed to absorb any legal fees and disbursements that might be incurred as a result of our representation of you.

tell lies" and, therefore, did not "need" a lawyer. "But," he added,

> I feel much better now that they came forward and told me this because it looked like Mr. Cohen [the Department of Justice attorney] was getting into some areas that I didn't think that I should be talking about and I'm glad I'm being represented now, although I still maintain that I don't need a lawyer because I'm not here to protect anybody or down anybody.

*Id.*[5]

Occidental has informed the court and counsel that it intends to notify some of its former employees that it has authorized its attorneys to represent them during the Love Canal proceedings. Legal fees attributable to such representation would be absorbed by Occidental. The proposed notice would advise the ex-employees that they are not required to be represented by counsel, but that representation by Phillips/Wald is a no-cost option. The notice would also state that the former workers could obtain independent counsel at their own expense. Finally, the addressees would be told that no conflict of interest is known to exist, and none is expected, but if a conflict arises, the ex-employees will be notified and have the opportunity to obtain other counsel.

Occidental's decision to offer to pay for legal representation to its ex-employees in these proceedings resulted, in part, from "the situation which arose during the deposition of John W. Gibson." Affidavit of Norman Alpert, Item 213, ¶ 5. Mr. Alpert,

Very truly yours,
PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER
[/s/ David K. Floyd]
David K. Floyd

4. The 1979 deposition was part of the proceedings in a private state court lawsuit involving Love Canal.

5. At the oral argument of this motion, there was some indication of what Mr. Gibson meant by his reference to the "areas" he did not wish to discuss. Apparently, Mr. Gibson had been asked the amount of his pension.

the company's Vice President for Corporate Environmental Affairs, also suggested that the decision was partially a continuation of Occidental's practice of informing its employees that they were not obligated to submit to informal interviews relating to the discovery proceedings in this lawsuit. He also noted that some employees had called Occidental to seek advice in connection with requests for informal interviews. *See,* Alpert affidavit and attached exhibits. Occidental has agreed not to send the notice to the former employees until the court decides the instant motion.

### III.

With respect to Mr. Gibson, the court declines to issue an order disqualifying Phillips/Wald from acting as his counsel. In reaching this decision, the court does not place its imprimatur upon the methods used by those firms in reaching their arrangement with him. However, the facts of this case do not warrant disqualification.

■ Motions to disqualify attorneys are generally disfavored. *Board of Education of New York City v. Nyquist,* 590 F.2d 1241 (2d Cir.1979); *Guthrie Aircraft Co. v. Genesee County, New York,* 597 F.Supp. 1097 (W.D.N.Y.1984). The movants complain that Mr. Floyd improperly solicited Mr. Gibson. They also suggest that there are potential conflicts between the interests of Mr. Gibson and those of Occidental, Phillips/Wald's main client.

No conflict of interest has been demonstrated here, and there is nothing to indicate that one is imminent. Mr. Gibson is not a defendant in this case, and he never will be. There is no chance that he will be subjected to any liability.

There is a possibility that he will give testimony adverse to Occidental. The movants argue that Phillips/Wald's loyalty to its primary client may impair their ability to give independent advice to him.

■ The court is not persuaded that the dual representation of Gibson and Occidental creates a likelihood of a significant conflict. Indeed, it is the alleged improper solicitation, not conflict of interest, which is the primary basis of this motion. Gibson's only interest in these proceedings is to be protected from unwarranted inquiries and to be able to consult with counsel during questioning when doubts arise. This is not a case where there is a significant risk that an attorney will gain confidential information from one client and disclose it to another client whose interests are adverse. *See, e.g., Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746 (2d Cir.1981).

The interests of Gibson and Occidental are not adverse. Moreover, it is clear from the record in this case that he has some notion that Floyd has always been his lawyer and that he wants the existing arrangement to continue. The court does not perceive any conflict of interest in violation of the canons of the Code of Professional Responsibility, and there is no indication that potential conflicts pose a significant risk of trial taint. Accordingly, the court declines to exercise its discretionary authority to disqualify the Phillips, Lytle and Wald, Harkrader firms from continued representation of Mr. Gibson on grounds of conflict of interest.

■ The solicitation issue presents a closer question. The court starts from the premise that rules discouraging solicitation of prospective clients by lawyers are intended primarily to protect the prospective client. In *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), the Supreme Court recognized that the state's interest in protecting lay persons from overreaching by professionals was strong enough to justify state regulation of in-person solicitation by lawyers. Unlike *Ohralik,* the instant case does not present an example of a professional exerting undue influence upon a layman.

It is true that the idea of obtaining legal representation did not originate with Mr. Gibson. Indeed, it appears that his only conception of an attorney-client relationship was that of a professional coming to the aid of a person who faced the risk of a criminal or civil penalty. It was Floyd who informed Gibson that he *could* obtain counsel for the purpose of advising him during the deposition. Not being aware that at-

torneys provided such services for persons who were not "in trouble," it did not occur to Gibson that the services of a lawyer would be helpful.

Floyd did not advise Mr. Gibson that there may be conflicts when he first brought up the idea that he could act as Gibson's attorney. This defect was corrected to some extent when the relationship between Floyd and Gibson was being finalized on January 7, 1985. At that time, Floyd handed Mr. Gibson the letter mentioned previously. *Ante*, 1472.

Floyd should have spelled out the possibility of conflicts sooner, but since I have found that potential conflicts are not material here, this defect is not serious enough to warrant disqualification. Floyd's failure to advise more completely about potential conflicts is significant only to the extent that it sheds light on the solicitation question. Under some circumstances, this could be an indication of the kind of over-reaching and pressure tactics which the ban on solicitation is designed to prevent.

In the case of Mr. Gibson, the record is bereft of any evidence that there was over-reaching here. Mr. Floyd's conduct is not at all comparable to cases in which unprin-cipled attorneys prey upon distraught victims of recent accidents. *Compare, Ohralik, supra.*

The fact that some tactical advantage might be gained by representing both Gibson and Occidental is not lost upon the court. Being a client of Phillips/Wald, counsel for the other parties in this case cannot interview Mr. Gibson on an informal basis without first contacting Phillips/Wald. This consideration is conspicuously present in the movants' arguments, and the court does not doubt that Phillips/Wald and Occidental are aware of it as well. It is this factor which suggests to the court that, while the conduct of Phillips/Wald was not unethical, it was not charitable either.

The State invokes two specific provisions of the New York State Code of Professional responsibility. Disciplinary Rule 2–103(A) discourages attorneys from soliciting employment from a person who has not sought legal advice if such conduct violates a statute or court rule. Similarly, DR 2–104 provides that a lawyer who has volunteered advice to a person that he should obtain counsel shall not accept employment from the person so advised.[6] The

6. DR 2–103 provides, in part, as follows:

(A) A lawyer shall not solicit employment as a private practitioner of himself or herself, a partner or an associate to a person who has not sought advice regarding employment of a lawyer in violation of any statute or court rule. Actions permitted by DR 2–104 and advertising in accordance with DR 2–101 shall not be deemed solicitation in violation of this provision.

(B) A lawyer shall not compensate or give anything of value to a person or organization to recommend or obtain employment by a client, or as a reward for having made a recommendation resulting in employment by a client, except by any of the organizations listed in DR 2–103(D).

(C) A lawyer shall not request a person or organization to recommend or promote the use of the lawyer's services or those of the lawyer's partner or associate, or any other affiliated lawyer as a private practitioner, except as authorized in DR 2–101, and except that:

(1) The lawyer may request referrals from a lawyer referral service operated, sponsored, or approved by a bar association and may pay its fees incident thereto.

(2) The lawyer may cooperate with the legal service activities of any of the offices or organizations enumerated in DR 2–103(D)(1) through (4) and may perform legal services for those to whom he was recommended by it to do such work if:

(a) The person to whom the recommendation is made is a member or beneficiary of such office or organization; and

(b) The lawyer remains free to exercise his independent professional judgment on behalf of his client.

*       *       *       *       *       *

(E) A lawyer shall not accept employment when he knows or it is obvious that the person who seeks his services does so as a result of conduct prohibited under this Disciplinary Rule.

DR 2–104 provides, in part, as follows:

Suggestion of Need of Legal Services

(A) A lawyer who has given unsolicited advice to an individual to obtain counsel or take legal action shall not accept employment resulting from that advice, in violation of any statute or court rule.

(B) A lawyer may accept employment by a close friend, relative, former client (if the advice is germane to the former employment)

pertinent statute is section 479 of New York's Judiciary Law, which prohibits the solicitation of legal business.

These rules do not compel the result sought by the movants on the issue of Phillips/Wald's representation of Gibson. There is no indication that he was mistreated or exploited, and the attorneys who filed this motion have not accused Floyd or anyone else of deliberately overbearing Gibson's will. Floyd solicited Gibson in the sense that he endeavored to represent him when Gibson would not have sought counsel. The suggestion that there would be no cost for legal services no doubt influenced Gibson to make the decision he made. But Floyd's past relationship with Gibson (*e.g.*, at the 1979 deposition), Gibson's sense that Floyd had always represented him, and his voluntary agreement to this arrangement make disqualification improper here.

The movants rely heavily upon *United States v. RMI Co.*, 467 F.Supp. 915 (W.D. Pa.1979). That case involved dual representation of a defendant corporation and its current employees in a criminal proceeding. The court disqualified counsel from representing the employees (who were neither defendants nor suspects but who were to be called by the government as trial witnesses), because it perceived a conflict of interest and a risk that the corporation's sixth amendment rights might be compromised. The *RMI* case is distinguishable, because the present case does not involve the sixth amendment and no significant conflict of interest is apparent.

More apposite here is *In Re Coordinated Proceedings in Petroleum Products Antitrust Litigation*, 658 F.2d 1355 (9th Cir. 1981), cited by Phillips/Wald. There, the Ninth Circuit vacated the district court's order disqualifying a corporation's counsel from representing former employees during depositions. The court stated that the Supreme Court's decision in *Upjohn* modified rules regarding solicitation when the objects of the "solicitation" are former employees. *Id.* at 1361. The court also stated that "pre-deposition insulation" of deponents was an "inconvenience" to opposing

counsel which was not a basis for disqualification. *Id.*

This court need not decide, as the Ninth Circuit did, that the attorney-client privilege applies to communications between a corporation's attorney and its ex-employees concerning activities during their period of employment. *See id.*, n. 7. Phillips/Wald's direct representation of Gibson avoids that issue. Still, the Ninth Circuit's decision supports the view that initiating contact with former employees regarding representation at depositions should not result in disqualification.

Two other points should be noted. First, Mr. Gibson is a man whose health requires that deposition sessions be brief and non-strenuous. Having an attorney whom he trusts and with whom he has had prior contact may well make the process easier. If Mr. Gibson thinks otherwise, he will terminate the relationship which, as he knows, is his prerogative.

Second, the Gibson deposition has already been through four sessions. During the first three, he was not represented by Phillips/Wald. Mr. Floyd stated at oral argument that the attorney-client privilege would not be invoked to frustrate discovery and that Mr. Gibson would always be advised that he could waive the privilege. The court finds no reason to believe Mr. Floyd will not act in accordance with this statement. Under these circumstances, the court concludes that it would be inappropriate to disqualify Phillips/Wald from representing Mr. Gibson. Accordingly, the motion to disqualify Phillips/Wald from representing Mr. Gibson during his deposition is denied.

## IV.

For the foregoing reasons, the court also declines to issue an order prohibiting Phillips/Wald from representing other former employees in connection with any depositions at which they may be called to testify. However, the court will grant the movants' request for an order enjoining

or one whom the lawyer reasonably believes to be a client.

Occidental from sending any notice containing an offer of legal assistance from Phillips/Wald.

The idea of sending a letter conveying such an offer arose, in large part, from the situation involving Mr. Gibson. Thus, it is clear that the idea essentially originated with Floyd and Phillips/Wald. The court does not question Mr. Floyd's integrity or that of his co-counsel. However, if Occidental sends offers to the former employees, it will be doing so upon behalf of Phillips/Wald, thus doing indirectly what Floyd did directly with Gibson.

I have stated that I do not believe Floyd's conduct relating to the arrangement with Gibson was unethical or wrong under the circumstances. However, I believe there is an appearance of impropriety when a law firm directly or indirectly mails an offer of legal services to future witnesses. It would have been better if Gibson's arrangement with Phillips/Wald had been initiated by Mr. Gibson. Whatever appearance of impropriety resulted from the Gibson matter was not great enough to warrant disqualification. But the court believes that if it is possible to avoid a negative appearance, conduct giving rise to it should be prevented.

The best way to avoid an appearance of impropriety is to enjoin the mailing of the notice. Phillips/Wald may still represent the former employees, but the attorney-client relationship must, if it is established at all, come about at the initial request of the former employees. Phillips/Wald may contact the former employees about the depositions and advise them that they are entitled to be deposed with or without counsel, but no offer to represent any prospective deponent shall be made unless the deponent specifically asks an attorney from Phillips/Wald to represent him. No one associated with Phillips/Wald or Occidental shall mention any fee arrangement unless the prospective client inquires about fees. Phillips/Wald or Occidental may mention the fee arrangement only if they are asked about fees first.

The court believes that such an order is justified to ensure that no overreaching, or the appearance thereof, occurs. *See Aspgren v. Montgomery Ward*, No. 82C7277 (N.D.Ill. Nov. 19, 1984). Counsel for Phillips/Wald maintain that the motive of pecuniary gain is negligible and that the appearance of impropriety is illusory. The court is not prepared to speculate on the amount of additional attorneys' fees that would result from dual representation. However, it is certain that there would be at least some additional income to the firms. Moreover, the court is unwilling to provide unnecessary encouragement for a method of obtaining legal work which results in one side gaining even a minor tactical advantage.

It is not improper for Phillips/Wald to represent these people, but it appears improper to permit the firms, through their primary client, to give unsolicited notice of their availability at no cost to prospective clients. *Koffler v. Joint Bar Ass'n*, 51 N.Y.2d 140, 432 N.Y.S.2d 872, 412 N.E.2d 927 (1980), does not suggest a different result. *Koffler* reiterated the view announced by the Supreme Court in *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), that advertising to the general public was permissible. However, the "solicitation" issue in *Koffler* did not involve persons who were targeted for depositions in a currently pending lawsuit. The letter Occidental proposes to send is not the kind of advertising that *Bates* and *Koffler* meant to protect.

The court is aware that its decision in this case is a public document which can be read by former employees. The issues before the court on this motion involve past and future conduct of defense counsel and their client, acting on their behalf. So long as defense counsel and Occidental comply with the spirit and letter of the Code of Professional Responsibility and of this order, the court will not interfere with the discovery proceedings in this case.

### V.

#### Conclusion

The motion to disqualify Occidental's present counsel from representing Mr. Gib-

son is denied. The motion for an order enjoining Occidental's counsel from representing other former Occidental·employees is also denied.

The request for an order enjoining Occidental from sending notices offering the legal services of Phillips/Wald is granted. Phillips/Wald may represent former Occidental employees only if the attorney-client relationship results from conduct consistent with part IV of this opinion.

So ordered.