**Carolyn SMITH, Plaintiff,**

v.

**DAGGETT COUNTY BOARD OF EDUCATION, et al., Defendants.**

**Civ. No. C86–0546G.**

United States District Court,
D. Utah, C.D.

Dec. 3, 1986.

**45**

John B. Anderson, Salt Lake City, Utah, for plaintiff.

Brinton R. Burbidge, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on for hearing on October 15, 1986, on plaintiff Carolyn Smith's Motion to Disqualify. Plaintiff was represented by John B. Anderson, and defendants Daggett County Board of Education, Dixie Grubb, Rusty Muir, Bryan Tinker and Lee Skabelund were represented by Brinton R. Burbidge. Legal memoranda were submitted on behalf of all parties and counsel argued the Motion extensively, after which the matter was taken under advisement. The court now being fully advised, sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Plaintiff alleges that the defendants violated her civil rights by terminating her position as a part-time counselor and employee of the Daggett County Board of Education. Allegedly, the decision to terminate plaintiff was motivated in whole or in part because of plaintiff's political views and her activities with the teacher's association. Plaintiff has filed a Motion to Disqualify counsel for defendants, contending that impermissible adverse client interests preclude the law firm of Kirton, McConkie & Bushnell from representing both the individual defendants and the public defendant, Daggett County Board of Education, in this action. Plaintiff argues that determination of the question whether the individual defendants were acting within the scope of their employment in terminating the plaintiff will be dispositive of the respective defendant's ultimate liability. Accordingly, plaintiff urges that separate counsel for these defendants should be required to insure adequate representation of their apparently adverse interests.[1]

Brinton R. Burbidge, counsel for all defendants in this action, states by affidavit that after receiving plaintiff's complaint he personally interviewed each member of the Daggett County School Board and was assured by each of the defendants that no

1. Plaintiff maintains that the individual defendants most likely will seek indemnification from the school board on the ground that their actions were within the scope of their employment. On the other hand, counsel for plaintiff argues that Daggett County Board of Education could and should claim that the individual defendant's conduct was beyond the scope of their employment. For full text of the applicable statutory indemnification provisions see Utah Code Ann. §§ 63–30–36 to 63–30–38 (1953).

member of the School Board acted to dismiss plaintiff Carolyn Smith for her political views or her participation with the teacher's association. Counsel further asserts that after a careful investigation he has determined that no conflict exists and that there is no good faith basis for the public defendant to assert that the individual defendants acted beyond the scope of their authority. Mr. Burbidge also avers that a full disclosure of the claimed conflict was made and that all defendants provided informed consent to being represented by the same lawyer. The position of defendants is that Carolyn Smith was dismissed out of economic necessity. Defendants maintain that Carolyn Smith and other part-time personnel were terminated from part-time employment solely for economic reasons. Accordingly, it is argued that neither the defendant Daggett County Board of Education, nor the individual defendants, acted wrongfully or maliciously in terminating the plaintiff.

## LEGAL ANALYSIS

### Standing

Although the matter was not raised in legal memoranda submitted or in oral argument, there is doubt as to whether plaintiff has standing to seek disqualification of defendants' counsel. This is not a former client situation, and there is not here presented a question of trial disruption, or potential unfair advantage. However, the court assumes, without deciding, that plaintiff has standing.[2] Accordingly, the court will address the issues presented.

### Motion to Disqualify Counsel

The United States District Court for the District of Utah has incorporated as a rule of court the Code of Professional Conduct as adopted by the Supreme Court of Utah and as adopted by the Judicial Conference of the United States.[3] Alleged violation of the law and/or ethical rules governing the conduct of lawyers in the context of litiga-

2. Some courts have required a demonstration of an interest such as that of an existing or former client as the basis for a motion to disqualify because of conflict of interest. *See In Re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 88 (5th Cir.1976). Nevertheless, "[t]he prevailing rule is that a motion for disqualification may be made by any person." R. Mallen & V. Levit, *Legal Malpractice,* § 163 at 267 (2d ed. 1981) and cases cited therein. Attorneys as officers of the court have been allowed to move for disqualification. In *Kevlik v. Goldstein,* 724 F.2d 844, 847–48 (1st Cir.1984), the court recognized an attorney's standing to raise a disqualification motion based upon the ethical responsibility of all attorneys to bring to the attention of the court possible ethical violations by other attorneys. *See also United States v. Clarkson,* 567 F.2d 270, 271 n. 1 (4th Cir.1977) (attorney is obligated to call to court's attention "facts justifying a disqualification of counsel"); *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.,* 563 F.2d 671, 673 (5th Cir.1977) (attorneys are authorized to report any ethical violations in a case); *Estates Theatres, Inc. v. Columbia Pictures Indus., Inc.,* 345 F.Supp. 93, 98 (S.D.N.Y. 1972) (attorney is duty bound to report any alleged violations of ethics). In *Shadid v. Jackson,* 521 F.Supp. 87, 89 (E.D.Tex.1981), the court found sufficient standing on the basis that if it should become necessary to subsequently disqualify one of the lawyers, such likely would require an extended recess to find substitute counsel thereby adversely impacting the trial proceedings in terms of a timely resolution of the case.

3. Rule 1(g) of the Civil Rules of Practice of the United States District Court for the District of Utah states:

The standards of conduct of the members of the Bar of this Court ... in a particular case shall be those prescribed by the Utah Code of Professional Responsibility and amendments thereto and revisions thereof and by the Code of Professional Responsibility approved by the Judicial Conference of the United States.

The Tenth Circuit Court of Appeals, in *E.E.O.C. v. Orson H. Gygi Co.,* 749 F.2d 620, 621 n. 1 (10th Cir.1984), recognized that the above quoted rule of practice incorporates both the state and national codes of professional responsibility and makes both binding upon counsel before this court. *See also City Consumer Services, Inc. v. Horne,* 571 F.Supp. 965, 969 (D.Utah 1983) ("Utah's Revised Code of Professional Responsibility, adopted by this court in Rule 1(g) of the Local Rules of Practice, [is] binding on all members of the federal bar."); *In re Roberts,* 46 B.R. 815 (D.Utah 1985). Of course, the Utah Supreme Court's construction of Utah's version of the Code is relevant and persuasive. (The Model Rules of Professional Conduct, adopted by the House of Delegates of the American Bar Association in 1983, are presently pending before the Supreme Court of Utah with modifications recommended by the Board of Commissioners of the Utah State Bar.)

tion requires a careful analysis of the nature of the violation and its impact upon the trial proceedings. A motion for disqualification because of an alleged conflict of interest requires consideration of such things as the egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been or is likely to be a diminution of effectiveness of counsel.[4] The essential issue to be determined in the context of litigation is whether the alleged misconduct taints the trial.[5] In the event of violation, the imposition of sanctions is left to the discretion of the trial court.[6]

*Multiple Representation of Clients with Potentially Conflicting Interests*

In this case, the basis for plaintiff's Motion to Disqualify is an alleged violation of Canon 5 of the Utah Code of Professional Responsibility which provides in pertinent part:

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client he *will be or is likely to be adversely affected by his representation of another client* or if it would be *likely to involve him in representing differ-*

ing interests, except to the extent permitted under DR5–105(C).[7]

DR 5–105(B).

Plaintiff urges that the individual defendants are in a position effectively to shift liability to the public defendant by demonstrating that they acted in good faith and within the scope of their authority. Conversely, the public defendant can obtain exoneration by showing that the individual defendants exceeded the scope of their employment. Several decisions have required separate representation under such circumstances. *See Van Ooteghem v. Gray,* 628 F.2d 488, 495 n. 7 (5th Cir.1980), *on reh.* 654 F.2d 304 (5th Cir.1981), *cert. denied* 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982); *Shadid v. Jackson,* 521 F.Supp. 87 (E.D.Tex.1981) (nonconsentable conflict in such a case). Cf. *Bell v. City of Milwaukee,* 536 F.Supp. 462, 477 (E.D.Wis.1982), *aff'd in part, vacated in part, rev'd in part on other grounds,* 746 F.2d 1205 (7th Cir.1984) (conflict, but cured by result, which requires city to indemnify employees on facts found).

■ There are few situations wherein it is appropriate for a lawyer to represent multiple clients who have potentially differ-

---

4. In *City Consumer Services, Inc. v. Horne,* 571 F.Supp. 965 (D.Utah 1983), the court stated:
   To disqualify a party's chosen attorney is a serious matter. "Where an attorney's conflict of interest undermines the court's confidence in the vigor of his representation of the client, the court may disqualify the attorney."
   *Id.* at 970 (citations omitted). *See also Bodily v. Intermountain Health Care Corp.,* 649 F.Supp. 468 (D.Utah 1986).

5. For instance, in *Beck v. Board of Regents,* 568 F.Supp. 1107 (D.C.Kan.1983), the court withheld its "inherent power" to disqualify stating that:
   The court should not act unless "the offending attorney's conduct threatens to 'taint the underlying trial' with a serious ethical violation." *Field v. Freedman,* 527 F.Supp. 935, 940 (D.Kan.1981). Whether or not the underlying trial may become tainted must be addressed in each case based on its own specific facts. *Id.* at 1110. *See also Meat Price Investigators Assoc. v. Iowa Beef Processors, Inc.,* 448 F.Supp. 1 (S.D.Iowa 1977), *aff'd,* 572 F.2d 163 (8th Cir. 1978).

6. The Tenth Circuit has long-recognized that "the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and his performance in this area is a matter of judicial discretion." *Redd v. Shell Oil Co.,* 518 F.2d 311, 314 (10th Cir.1975); *Waters v. Western Co. of North America,* 436 F.2d 1072, 1073 (10th Cir.1971). The trial court's disposition of a disqualification motion is reversed "only if the court has abused its discretion." *E.E.O.C. v. Orson H. Gygi Co., Inc.,* 749 F.2d 620, 621 (10th Cir.1984).

7. DR 5–105(C) provides:
   (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients *if it is obvious* that he can adequately represent the interest of each *and if each consents to the representation after full disclosure* of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

ing interests.[8] However, the mere assertion that differing interests may arise is not sufficient to require disqualification of counsel. Where such claims of conflict are made, a lawyer who conducts a full good faith investigation of the basis of the apparent claims and finds such to be implausible, or obtains from each client informed consent after full disclosure, may proceed to represent multiple clients.[9]

■ In this case it appears that a full investigation was undertaken by counsel regarding the claimed conflict, that a full disclosure was made, wherein all defendants were fully informed, and that all defendants freely consented to be represented by the same counsel. It therefore appears that Kirton, McConkie & Bushnell properly can represent all of the defendants in this litigation. This court is persuaded that the defendants' interests are adequately protected by having been informed of the potential and claimed conflict.[10] Under these circumstances, defendants should be allowed to determine the question of joint representation for themselves. *See Kerry Coal Co. v. United Mine Workers,* 470 F.Supp. 1032, 1036 (W.D.Pa.1979). Accordingly, plaintiff's Motion to Disqualify is denied.

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

**8.** Ethical Consideration 5–15, as published by the American Bar Association, provides:

If a lawyer is requested to undertake to continue representation of multiple clients having *potentially differing interests,* he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. *A lawyer should never represent in litigation, multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.* If a lawyer accepted such employment and the interest did become actually differing, he would have to withdraw from employment with the likelihood of resulting hardship on the clients; and

for this reason *it is preferable that he refuse the employment initially.* (Emphasis added)

**9.** A lawyer who proposes to represent coparties in litigation is under an obligation of loyalty and competence to investigate the basis of apparent claims that each may have against the other. If such a claim appears plausible, the lawyer should proceed no further with the joint representation unless each client consents, if this is permissible, after disclosure. C. Wolfram, *Modern Legal Ethics,* § 7.3.3 at 353 (1986).

**10.** Defendants also should be informed that there may be possible advantages in retaining separate counsel. *See United States v. Donahue,* 560 F.2d 1039 (1st Cir.1977).