Ilsa GUILLEN et al., Plaintiffs,

v.

CITY OF CHICAGO, et al., Defendants.

No. 95 C 5911.

United States District Court,
N.D. Illinois,
Eastern Division.

March 3, 1997.

Robert Orman, Law Office of Robert Orman, Chicago, IL, Jeffrey H. Haas, Janis M. Susler, People's Law Offices, Chicago, IL, Jeffrey Wayne Finke, Raleigh and Helms, Chicago, IL, for Lizbeth Guillen, Christopher Guillen and Ilsa Guillen.

Thomas R. Samson, Irene Schid Caminer, Sharon Baldwin, Margaret Ann Carey, Patricia Jo Kendall, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, Susan S. Sher, Chicago, IL, Taryn Springs, Board of Educ. of City of Chicago, Chicago, IL, for City of Chicago.

Thomas R. Samson, David Mitchell Zinder, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, Thomas Joseph Platt, City of Chicago, Law Dept., Chicago, IL, John F. McGuire, City of Chicago Law Dept., Chicago, IL, Taryn Springs, Board of Educ. of City of Chicago, Chicago, IL, for Daniel L. Parise.

Douglas Marshall McMillan, Thomas R. Samson, David Mitchell Zinder, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, John F. McGuire, City of Chicago Law Dept., Chicago, IL, Taryn Springs, Board of Educ. of City of Chicago, Chicago, IL, for Chris E. Andersen.

Thomas R. Samson, David Mitchell Zinder, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, John F. McGuire, City of Chicago, Law Dept., Chicago, IL, Taryn Springs, Board of Educ. of City of Chicago, Chicago, IL, for Michael A. Ponti.

Douglas Marshall McMillan, Arlene Esther Martin, Patrick Walter Johnson, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, Taryn Springs, Board of Educ. of City of Chicago, Chicago, IL, for M. Flynn, P. Leonard, James L. O'Neill, and Linda Fogarty.

## MEMORANDUM OPINION

GRADY, District Judge.

Before the court is the plaintiffs' motion to (1) prevent the defendants' attorneys from representing two nonparty witnesses during the witnesses' depositions, and (2) interview those witnesses without the defendants' attorneys being present. For the reasons stated in this opinion, the plaintiffs' motion is denied.

## I. BACKGROUND

Ilsa Guillen ("the plaintiff"), the widow of Jorge Guillen ("Mr. Guillen"), has filed a variety of civil rights claims against several Chicago police officers and against the City of Chicago itself. The plaintiff's complaint is based upon the officers' alleged role in the death of her husband on October 3, 1995. The plaintiff is suing as the personal representative of Mr. Guillen's estate. She is also suing on behalf of (1) herself, and (2) Lizbeth and Christopher Guillen, the daughter and son of the deceased. An abbreviated version of the circumstances surrounding Mr. Guillen's death follows.

On the night of October 3, 1995, Lizbeth Guillen called a "911" operator and requested the assistance of the Chicago Police Department because her father was acting irrationally. Within approximately thirty minutes, three officers arrived at the Guillen residence and attempted to subdue Mr. Guillen. At some point during the encounter, the officers called for backup and four additional officers arrived at the scene. According to the complaint, several officers bludgeoned Mr. Guillen with their nightsticks and then suffocated him by applying pressure to his neck and back. Some time after Mr. Guillen had lost consciousness, two paramedics, Vacountess Marlow and Timothy O'Leary, arrived at the Guillens' apartment. The complaint alleges that the officers made no attempt either to revive Mr. Guillen once he stopped breathing or to provide Mr. Guillen with any other form of medical assistance before the paramedics reached the apartment. The paramedics transported Mr. Guillen to a hospital but he was pronounced dead shortly after arrival.

The plaintiff has now moved to disqualify the City's corporation counsel ("City counsel") from representing Marlow and O'Leary at their depositions. The plaintiff has also requested that her attorneys be able to interview the paramedics without City counsel being present. The plaintiff contends that in their official report and in contemporaneous interviews with investigators, the paramedics made a number of statements which demonstrate that the officers failed to provide Mr. Guillen with emergency medical care. The plaintiff also maintains that a subsequent police report erroneously claims that the paramedics changed their accounts of the incident in a later interview. Relying on Disciplinary Rule 5–105(B) of the American Bar Association's Model Code of Professional Responsibility, the plaintiff argues that City counsel's common representation of both the defendants and the paramedics creates a conflict of interest that warrants disqualification:

> The paramedics' interest is, and should be, in telling the truth, which, according to their initial reports, demonstrates that Chicago Police Officers failed to provide Jorge Guillen with medical care even after they knew he had stopped breathing.

> The City's interest is in showing that the defendant officers did not violate Mr. Guillen's rights, harm him through their actions, or deny him medical care, and further that they were properly trained to handle the situation when they used deadly force.

Plaintiffs' Motion to Disallow Corporation Counsel's Common Representation of City of Chicago and Neutral City Employee Paramedics ("Plaintiffs' Motion") at 4, ¶¶ 16–17.[1]

1. The plaintiff further contends that City counsel has refused to produce the paramedics for depositions, instructed the plaintiff's attorneys not to contact the paramedics, and used the production of the paramedics as a "bargaining chip" to obtain discovery materials from the plaintiff. Plaintiffs' Motion at 3–4, ¶¶ 12–14. City counsel flatly denies that it has improperly delayed the depositions of the paramedics. Defendant City's Response to Plaintiffs' Motion to Disallow Corporation Counsel's Common Representation at 3 n. 2. Because a motion to compel discovery is not before the court, we reserve judgment on these matters.

City counsel responds that its representation of the paramedics does not create a conflict of interest. Specifically, City counsel asserts that (1) the paramedics are not parties to the case and will not be harmed in any way by the actions of the City's attorneys, and (2) the paramedics' accounts of the events leading to Mr. Guillen's death will not create liability for the defendants. City counsel also argues that even if a conflict of interest did exist, the plaintiff's attorneys would still be prohibited from conducting *ex parte* interviews by Rule 4.2 of the Rules of Professional Conduct for the Northern District of Illinois. Such interviews would be inappropriate, according to City counsel, because the paramedics' statements might constitute admissions by the City as party defendant. We hold that City counsel's common representation of the defendants and the paramedics does not, at present, create a conflict of interest, and that the plaintiff's attorneys may not interview the paramedics outside the presence of City counsel.

## II. DISCUSSION

### A. Attorney Disqualification

At the outset, it should be noted that both parties have neglected to address the question of whether DR 5–105(B) is even applicable to the case at hand. An examination of the Local Rules for the Northern District reveals that it is not. In July 1982, through a series of amendments to the General Rules, the Northern District adopted the provisions of the American Bar Association's Model Code of Professional Responsibility. United States District Court, Northern District of Illinois, General Order (July 12, 1982) (on file with the Office of the Clerk); *see also Lawline v. American Bar Ass'n,* 738 F.Supp. 288, 291 (N.D.Ill.1990), *aff'd,* 956 F.2d 1378 (7th Cir.1992) (observing that in 1982 the court "embraced the ABA Model Code"). Under the 1982 version of General Rule 3.54(B), attorneys who failed to abide by the provisions of the Model Code were subject to disbarment or to other disciplinary measures.[2] *See Stamp v. Brown,* No. 81 C 1475, 1990 WL 19981, at *2 (N.D.Ill. Feb.27, 1990) (commenting that Rule 3.54(B) incorporated the provisions of the Model Code). However, in March 1991, the Northern District vacated and set aside Rules 3.50 through 3.59. The court simultaneously promulgated a new set of General Rules numbered 3.50 through 3.60. United States District Court, Northern District of Illinois, General Order Adopting Disciplinary Rules (Mar. 28, 1991) (on file with the Office of the Clerk). Rule 3.54(B) was superseded by Rule 3.52(B), which provides that the standards for determining attorney misconduct are to be based on the "Rules of Professional Conduct for the Northern District of Illinois."[3] *See Scholes v. Tomlinson,* Nos. 90 C 1350 et al., 1991 WL 152062, at *2 n. 2 (N.D.Ill. July 29, 1991) (noting that "Local Rule 3.54(B) has very recently been supplanted by new Local Rule 3.52(B)"). These "Rules of Professional Con-

---

**2.** The old version of Rule 3.54 was entitled "Extent of Discipline." Subpoint "B" of Rule 3.54, dealing with plenary proceedings, read as follows:

Any attorney authorized to practice before this court who has committed any act or acts of professional misconduct such as fraud, deceit, malpractice or failure to abide by the provisions of the code of Professional Responsibility of the American Bar Association may be disbarred from further practice before this court. Local Rules for the Northern District of Illinois, Rule 3.54(B) (1982).

**3.** General Rule 3.52, entitled "Standards For Professional Misconduct," states in full:

A. Attorney may be disciplined for misconduct

For misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this Court may be disbarred, suspended from practice before this Court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.

B. Standards for determining misconduct based on *Rules of Professional Conduct for the Northern District of Illinois*

Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, that violate the *Rules of Professional Conduct for the Northern District of Illinois* shall constitute misconduct and shall be grounds for discipline (whether or not the act or omission occurred in the course of an attorney-client relationship).

Local Rules for the Northern District of Illinois, Rule 3.52 (1995).

duct" are comprised of selected portions of the American Bar Association's Model Rules of Professional Conduct and the Illinois Rules of Professional Conduct. Rules of Professional Conduct for the Northern District of Illinois, Rules 1.1–8.5 (1995); *see also Reuben H. Donnelley Corp. v. Sprint Publ'g & Adver. Inc.,* No. 95 C 5825, 1996 WL 99902, at *2 n. 1 (N.D.Ill. Feb.29, 1996) (noting that the Northern District has adopted certain segments of the Illinois Rules).

Thus, as a technical matter, the ethical canon on which the parties have focused their attention no longer governs the conduct of attorneys before the Northern District. *See Lawline v. American Bar Ass'n,* 956 F.2d 1378, 1381 n. 1 (7th Cir.1992) (noting that the ABA Model Rules superseded the Model Code in 1983 and that provisions of the Code "are now extinct in Illinois state courts as well as the Northern District"). As a result, the court would have no qualms evaluating the current motion exclusively under the rubric of the Northern District's Local Rules. However, because the result is the same under DR 5–105(B) and the applicable Local Rules, and because much of the relevant case law was decided under DR 5–105(B), the court will consider the parties' arguments in light of both the Model Code of Professional Responsibility and the Rules of Professional Conduct for the Northern District.

 Disqualification motions require a two-step analysis. The court must consider (1) whether an ethical violation has actually occurred, and (2) if disqualification is the appropriate remedy. *Reuben H. Donnelley,* 1996 WL 99902, at *2; *SWS Fin. Fund A v. Salomon Bros., Inc.,* 790 F.Supp. 1392, 1399 (N.D.Ill.1992). The burden is on the moving party to show facts necessitating disqualification. *Lanigan v. Resolution Trust Corp.,* No. 91 C 7216, 1992 WL 350688, at *1 (N.D.Ill. Nov.23, 1992); *see also Evans v. Artek Sys. Corp.,* 715 F.2d 788, 794 (2d Cir. 1983) (noting that the movant "bears a heavy burden of proving facts required for disqualification"). When appropriate, disqualification protects the attorney-client relationship by ensuring that clients receive the undivided loyalty of their counsel. *Alexander Proudfoot PLC v. Federal Ins. Co.,* No. 93 C 6287,

1994 WL 110531, at *2 (N.D.Ill.Mar.30, 1994). On the other hand, it is well settled that attorney disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir.1993) (quoting, *inter alia, Schiessle v. Stephens,* 717 F.2d 417, 420 (7th Cir.1983)); *Weeks v. Samsung Heavy Indus. Co.,* 909 F.Supp. 582, 583 (N.D.Ill.1996). In addition to creating unnecessary delay, disqualification often deprives a party of his chosen legal advisor. *Robin v. Katten, Muchin, Zavis, Pearl & Galler,* No. 85 C 8913, 1986 WL 7079, at *6 (N.D.Ill. June 13, 1986). Moreover, both judicial opinions and the Rules of Professional Conduct themselves recognize that motions for disqualification "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir.1982); Rules of Professional Conduct for the Northern District of Illinois, Rule 1.7 cmt. (1995); *see also Stopka v. Alliance of Am. Insurers,* No. 95 C 7487, 1996 WL 204324, at *2 (N.D.Ill. April 25, 1996) (citing *Freeman* with approval). One court has summarized the standard of review for disqualification motions as follows:

> [T]he Seventh Circuit considers the right of a party to select counsel of his choice to be a matter of significant importance, which will not be disturbed unless a specifically identifiable impropriety *has occurred.* A disqualification order discredits the bar generally and the individual attorneys particularly. Thus, while there can be no hesitation to disqualify where impropriety *has occurred* ... judges must exercise caution not to paint with a broad brush stroke under the misguided belief that coming down on the side of disqualification raises the standard of legal ethics and the public's respect. The opposite effects are just as likely—encouragement of vexatious tactics and increased cynicism by the public.

*Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1576–77 (Fed.Cir.1984) (citations omitted). With these considerations in mind, we now turn to an analysis of the relevant ethical rules.

The closest analogue to DR 5–105(B) in the Rules of Professional Conduct for the Northern District is Rule 1.7. Although the two rules are not perfectly identical, *see* Model Rules of Professional Conduct, Rules 1.7, 1.13, & 2.2, Model Code Comparisons (1994) (noting that DR 5–105(B) has no direct counterpart in the Model Rules), DR 5–105(B) and Rule 1.7 are comparable in purpose and design. Disciplinary Rule 5–105(B) states that an attorney should not continue "multiple employment" if the employment is likely to (1) adversely affect his judgment on behalf of one or both of the clients, or (2) involve the attorney in representing differing interests. The attorney may, however, continue to represent both clients "if it is obvious that he can adequately represent the interest of each" and if each consents to the representation after full disclosure. Model Code of Professional Responsibility DR 5–105(B)–(C) (1981).[4] Similarly, Rule 1.7 provides that an attorney shall not represent a client if the representation of that client will be (1) directly adverse to another client, or (2) materially limited by the lawyer's responsibilities to others or by the lawyer's own interests. The rule permits an attorney to proceed with representation under these circumstances if the attorney reasonably believes the client will not be adversely affected and if the client consents after disclosure. Rules of Professional Conduct for the North-

ern District of Illinois, Rule 1.7 (1995).[5] The comments to the ABA Rules indicate that Rule 1.7 was intended to clarify DR 5–105(A) and DR 5–105(C) "by requiring that, when the lawyer's other interests are involved, not only must the client consent after consultation but also that, independent of such consent, the representation reasonably appears not to be adversely affected by the lawyer's other interests." Model Rules of Professional Conduct, Rule 1.7, Model Code Comparison cmt. 2 (1994).

### 1. DR 5–105(B)

 As the previous quotation from the *Panduit* case indicates, an attorney should not be disqualified under DR 5–105(B) unless there is a substantial basis for believing that *actual*, rather than merely potential, conflicts of interest are afoot. *See Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145–46 (4th Cir. 1992) (finding that disqualification "may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur"); *Robin*, 1986 WL 7079, at *9 (noting that disqualification is unwarranted when the potential for conflicts "has yet to be realized"); *Smith v. Daggett County Bd. of Educ.*, 650 F.Supp. 44, 48 (D.Utah 1986) (noting that "the mere assertion that differing interests may arise is not

---

4. Disciplinary Rule 5–105, entitled "Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer," states in part:

> (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).
> (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each....

Model Code of Professional Responsibility, DR 5–105(B)–(C) (1981).

5. Rule 1.7 is entitled "Conflict of Interest: General Rule." The Rule provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> (2) each client consents after disclosure.
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after disclosure.
> (c) When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved.

Rules of Professional Conduct for the Northern District of Illinois, Rule 1.7 (1995).

sufficient" for disqualification). As the court reasoned in *Clay v. Doherty,* 608 F.Supp. 295 (N.D.Ill.1985), "[t]here is always the *potential* for conflict in multiple representation cases. Without more, however, that potential is insufficient to compel withdrawal or disqualification. Vague and general inconsistencies of position giving rise to hypothetical conflicts in the mind of an opposing party will not justify so drastic a measure as disqualification." *Id.* at 303.

Here, we find that the plaintiff has not demonstrated that an impermissible conflict of interest has emerged (or almost certainly will emerge) in concrete form. First, as it currently stands, the factual "record" created by the plaintiff is insufficient to justify disqualification. The plaintiff's motion rests on a simple proposition: that the testimony of Marlow and O'Leary will lay the groundwork for the plaintiff's claims against the officers and the City. It is certainly conceivable that the paramedics' testimony will be at odds with the testimony of some of the officers. This, however, is a factual question, and at this stage we simply cannot assume that the paramedics' accounts are likely to establish official liability. Neither the reports nor the contemporaneous interviews of the paramedics have been presented to the court.[6] To hold that City counsel should be disqualified based on the contents of those interviews and reports would be nothing short of shooting in the dark. *See Clay,* 608 F.Supp. at 303 (finding that differing accounts among defendants "could, of course, give rise to real conflicts, but that potential has yet to be realized"). Moreover, City counsel maintains that the statements of the paramedics are not inconsistent with the interests of the defendants. *See* Defendant City's Response

to Plaintiffs' Motion to Disallow Corporation Counsel's Common Representation at 6, 10 ("Defendant's Response") (stating that "Plaintiffs' assertion that the City's 'interest' will be harmed if O'Leary and Marlow tell the truth is nothing more than Plaintiffs' self-serving speculation" and that "the truth will not hurt [the City's] theory of the case"). Because the court has no way of verifying either party's description of the paramedics' testimony, we hold that the plaintiff has not yet discharged her "heavy burden" of showing facts sufficient to warrant disqualification.

▮ Second, even if we assume that the plaintiff *has* established to a reasonable certainty that the paramedics' testimony will be damaging to the defendants, the plaintiff has not adequately explained how such a conflict would interfere with City counsel's "independent professional judgment" on behalf of the paramedics. According to the plaintiff, the alleged conflict between the paramedics and the defendants will force City counsel to instruct the paramedics to (1) lie or disavow truthful portions of their testimony, or (2) frustrate the discovery process by refusing to answer legitimate questions.[7] As to the first possibility, City counsel has assured the court that it will not "act in an unethical manner [or] participate in the criminal action of suborning perjury." Defendant's Response at 11–12. In view of that assurance, at this time we are unwilling to assume that City counsel will take actions that are obviously illegal. On this point, the *Clay* decision is again instructive: "This Court will not *presume* reputable counsel have winked or wholly ignored their responsibilities under the Code, at least when their representations

---

**6.** Although the plaintiff claims in a supplemental memorandum that portions of the paramedics' reports are attached as "Exhibit A" and "Exhibit B," this is not the case. For whatever reason, no documents were attached to the memorandum when it was submitted to the court. *See* Plaintiffs' Supplemental Memorandum of Law in Support of Their Motion to Disallow Corporation Counsel's Common Representation of City of Chicago and Neutral City Employees Paramedics at 2.

**7.** See, for example, paragraphs 19 and 24 on pages 5–6 of the Plaintiffs' Motion to Disallow

Corporation Counsel's Common Representation of City of Chicago and Neutral City Employee Paramedics:

The paramedics could face criminal or civil penalties if they change their testimony to benefit the City defendant, and the City will be harmed if [the] paramedics reiterate what is in their original reports and interviews....

[I]t is not in the plaintiff's interests or the interests of truth to allow an interested party's attorneys to represent neutral witnesses with potentially inculpatory evidence concerning the City.

are to the contrary. To give any lesser credence to counsel's representations, and to the bar's capacity for self-regulation, seems both cynical and unwise." 608 F.Supp. at 304. As to the second possibility, remedies less drastic than disqualification are available to solve any problems that might arise during the discovery process. The court may, for example, call upon City counsel to explain why it has objected to some or all of the plaintiff's questions. The court could also impose appropriate sanctions against City counsel for vexatious delays. *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,* 658 F.2d 1355, 1361–62 (9th Cir.1981) (noting that district courts have a number of remedies at their disposal short of attorney disqualification). We therefore hold that disqualification is not warranted at the present time.[8]

The plaintiff refers the court to a number of cases in support of her argument that the interests of the defendants and the paramedics are irreconcilable. However, none of these cases is similar enough to the dispute at hand to require disqualification. The plaintiff primarily relies on *Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir.1984). In that case, Dunton filed § 1983 claims against a police officer and the Suffolk County police department. The complaint alleged that the officer assaulted Dunton after discovering him in a car with the officer's wife (the officer's wife claimed that Dunton had been making improper advances). The county attorney defended both the officer and the County. *Id.* at 905–06. The officer claimed, among other things, that he was entitled to good faith immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). During the trial, however, the county attorney stated that the officer was not acting under color of state law, but rather as an "irate husband." While this was a good defense for the County under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it directly undercut the officer's immunity defense and the officer was subsequently found

liable in his individual capacity. The Second Circuit, citing Canons 5 and 9 of the ABA Code, held that the county attorney should have been disqualified. *Id.* at 907. The other cases cited by the plaintiff involve similar fact patterns. *See Manganella v. Keyes,* 613 F.Supp. 795 (D.Conn.1985) (holding that "[a]n inherent conflict of interest arises in a § 1983 action when co-defendants in a suit are a local government and police officers or other employees in their individual capacity, as differing theories of liability and differing defenses are applicable to each defendant"); *Shadid v. Jackson,* 521 F.Supp. 87 (E.D.Tex. 1981) (disqualifying an attorney from dual representation in a civil rights case because while one defendant could escape liability by demonstrating his actions were related to his official duties, the other defendant could avoid liability by showing that the first defendant acted outside the scope of his employment).

For two reasons, *Dunton* and its companion cases are distinguishable. First, and most importantly, *Dunton* is chiefly concerned with the vigorous pursuit of trial defenses. When, for example, an individual officer and a municipality are sued jointly under § 1983, an attorney representing both defendants is often caught between a rock and a hard place: A good faith immunity defense for the former may directly undermine an "outside the scope of employment" defense for the latter (or vice versa). *See Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 341 (2d Cir.1986) (commenting that cases such as *Dunton* involve "multiple representation in the litigation, where conflicting strategies might have been pursuant at trial on behalf of clients represented by the same attorney"); *Katz v. Morgenthau,* 709 F.Supp. 1219, 1228 (S.D.N.Y. 1989) (emphasizing that *Dunton* addresses § 1983 cases in which conflicting defenses are asserted). No such catch–22 is evident in the case at bar. Marlow and O'Leary are not named as defendants, and their role at trial will apparently be limited to testifying as witnesses. Similarly, the plaintiff has not

---

8. The court is aware of the fact that the plaintiff may be inconvenienced by City counsel's representation of the paramedics. Standing alone, however, inconvenience is not a valid basis for attorney disqualification. In re *Coordinated Pretrial Proceedings,* 658 F.2d at 1361; *United States v. Occidental Chem. Corp.,* 606 F.Supp. 1470, 1475–76 (W.D.N.Y.1985).

suggested that City counsel has taken or is likely to take any actions that might expose the paramedics to liability. While City counsel's behavior during the paramedics' depositions should be closely scrutinized, the plaintiff simply has not identified any scenario that would implicate the black-letter law of *Dunton*.[9] Second, and relatedly, *Dunton* involved a palpable conflict that materially limited an attorney's ability to represent a client. Again, as the court explained in *Clay*, "the basis of the Second Circuit's conclusion that the individual defendant had been adversely affected by joint representation was an actual and egregious conflict." 608 F.Supp. at 304; *see also Bernardi v. City of Scranton*, 598 F.Supp. 26, 28 n. 2 (M.D.Pa. 1984) (noting that "[e]ven a casual reading of the facts involved in *Dunton* demonstrates the acute nature of the conflict implicated therein"). Thus, *Dunton* does not authorize disqualification when the conflicts of interest remain merely hypothetical. *Clay*, 608 F.Supp. at 304 n. 7. As we have previously discussed, while City counsel's representation of the paramedics creates the potential for conflicts, those conflicts have not yet taken a definite shape.

Furthermore, City counsel has cited a number of cases that are more illuminating than *Dunton*. In *In re Coordinated Pretrial Proceedings*, for example, a federal district court entered an order disqualifying defense counsel from representing a former employee of the defendant in connection with discovery depositions. 658 F.2d at 1356. Among the reasons given by the district court in support of disqualification were (1) that common representation would limit the ability of the plaintiff's counsel to informally ascertain the scope of the employee's knowledge and the desirability of deposing him, and (2) that

defense counsel might be tempted to interrupt during the deposition on behalf of the defendant rather than the employee. *Id.* at 1359. On appeal, the Ninth Circuit vacated the district court's order. After stating that "mere inconvenience and frustration do not warrant interference with the right to counsel," the Ninth Circuit found that sanctions, rather than disqualification, would be the appropriate remedy for indefensible discovery objections by defense counsel. *Id.* at 1361. Similarly, in *United States v. Occidental Chemical Corporation*, 606 F.Supp. 1470 (W.D.N.Y.1985), the plaintiff attempted to prohibit the defendant's attorneys from representing a former employee of the defendant during discovery proceedings. *Id.* at 1471. In support of the motion, the plaintiff argued that the possibility that the employee would give testimony adverse to the defendant would impair defense counsel's ability to give independent advice to him. *Id.* at 1474. Nonetheless, the court found that the dual representation did not create a significant conflict of interest. The court emphasized that (1) the employee was not a defendant and would not be subjected to liability in any way, and (2) the employee's only real interest during discovery was "to be protected from unwarranted inquiries and to be able to consult with counsel during questioning when doubts arise." *Id.; see also D.S. Magazines, Inc. v. Warner Publisher Servs., Inc.*, 623 F.Supp. 624, 625 (S.D.N.Y.1985) (permitting an attorney to represent a former employee of the defendant because, *inter alia*, there was virtually no chance that the parties would become opposing litigants). Whether or not these decisions precisely address the issue in the case before us today, they are

---

9. City counsel's argument that *Coleman v. Smith*, 814 F.2d 1142 (7th Cir.1987) has "severely limited" *Dunton*'s precedential value is a bit of an overstatement. *See* Defendant's Response at 8. While the court in *Coleman* did state that it was "troubled" by the Second Circuit's conclusion that an automatic conflict results when a governmental entity and an employee are sued under § 1983, it acknowledged that *Dunton* did not hold that *disqualification* should be "automatic" under these circumstances. *See Coleman*, 814 F.2d at 1147–48 (recognizing that note 4 of the *Dunton* opinion disavows a *per se* disqualification rule); *see also Galvin v. Lloyd*, 663 F.Supp. 1572, 1582 (D.Conn.1987) (noting that, like *Dunton*,

*Manganella* did not adopt a *per se* disqualification rule for dual representation in § 1983 cases). After making these preliminary observations, the court in *Coleman* then distinguished *Dunton* on the facts. 814 F.2d at 1148; *see also Hutcherson v. Smith*, 908 F.2d 243, 245 (7th Cir.1990) (noting that *Coleman* differentiated *Dunton* on a factual basis). Thus, while joint representation in § 1983 cases is not automatically prohibited in the Seventh Circuit, courts are still required to "remain[] sensitive" to potential conflicts of interest. *Ross v. United States*, 910 F.2d 1422, 1432 (7th Cir.1990); *Smith v. Martin*, 819 F.Supp. 733, 736–37 (N.D.Ill.1992).

certainly more relevant than the *Dunton* line of cases.

## 2. Rule 1.7

■ Much of our analysis under DR 5–105(B) is equally applicable under Rule 1.7 of the Rules of Professional Conduct for the Northern District. Rule 1.7(a) can quickly be ruled out as a basis for disqualification. Rule 1.7(a) codifies the proposition that "loyalty to a client prohibits undertaking representation *directly adverse* to that client without that client's consent." Rules of Professional Conduct for the Northern District of Illinois, Rule 1.7 cmt. (emphasis added). Disqualification is therefore justified under Rule 1.7(a) only when the positions taken by an attorney's clients are directly antagonistic. *See International Longshoremen's Ass'n, Local Union 1332 v. International Longshoremen's Ass'n*, 909 F.Supp. 287, 292–93 (E.D.Pa.1995) (entering a disqualification order because "[i]n this case, counsel are defending one client against claims brought by another client"); *United States v. Alex*, 788 F.Supp. 359, 362 (N.D.Ill.1992) (disqualifying an attorney because the interests of his clients in a RICO extortion case were "diametrically opposed"); *Polydoroff v. Interstate Commerce Comm'n*, 773 F.2d 372, 374–75 (D.C.Cir.1985) (affirming disciplinary actions by the I.C.C. against an attorney who oversaw a personal legal challenge against a current client). Additionally, as with DR 5–105(B), the mere potential that conflicts of interest might arise is insufficient to justify disqualification under 1.7(a). *See Gates Rubber Co. v. Bando Chem. Indus.*, 855 F.Supp. 330, 336 (D.Colo.1994) (noting that only an "apparent actual conflict," not one "arising from Plaintiff's version of a future scenario," justifies disqualification); *Ricciardi v. Sylvester Sheet Metal*, No. C 94 101 L, 1994 WL 406834, at *3 (D.N.H. July 25, 1994) (noting that the mere possibility of a representational conflict "is not sufficient to disqualify an attorney"); *Chapman Eng'rs, Inc. v. Natural Gas Sales Co.*, 766 F.Supp. 949, 956 (D.Kan.1991) (refusing to disqualify an attorney because "[t]he likelihood of a conflict in positions ... is nothing more than speculation over possibilities"). We have already established that,

at present, the conflict between the paramedics and the defendants is neither direct nor concrete.

■ The more interesting question is whether City counsel's representation of the paramedics comports with Rule 1.7(b) and (c). Part (b) of the Rule recognizes that "[l]oyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests." Rules of Professional Conduct for the Northern District of Illinois, Rule 1.7 cmt. The language of Rule 1.7(b) is arguably broader than that of Rule 1.7(a). Rule 1.7(a) applies only when representation *will* be directly adverse to the representation of another client; Rule 1.7(b) applies when representation *may* be materially limited by other responsibilities of the attorney. Hence, while a potential conflict does not preclude representation under Rule 1.7(b), "[t]he critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment ...." Rules of Professional Conduct for the Northern District of Illinois, Rule 1.7 cmt. Moreover, Rule 1.7(c) requires that both the risks and the advantages of common representation be disclosed to the parties.

■ We hold that City counsel can continue its representation of the paramedics, but with one caveat: City counsel must fully inform its clients of the pros and cons of joint representation. To echo our earlier comments, immediate disqualification under Rule 1.7(b) is unnecessary because no actual conflict has materialized between City counsel and the paramedics. *See In re ML–Lee Acquisition Fund II, L.P. & ML–Lee Acquisition Fund II, L.P. Sec. Litig.*, 848 F.Supp. 527, 556–57 (D.Del.1994) (refusing to disqualify a law firm even though the firm faced potential liability for the same conduct attributed to the defendants because, *inter alia*, (1) the plaintiff failed to demonstrate an actual, rather than a potential, existed, and (2) the plaintiff failed to demonstrate how the alleged conflicts would interfere with counsel's representation of the defendants); *BML*

*Group, Inc. v. U.S. Pizza, Inc.*, No. 88–7463, 1992 WL 114958, at *2–*3 (E.D.Pa. May 20, 1992) (refusing to disqualify a firm representing both the plaintiffs and the employer of one of the defendants because "any limiting effect seems slight and does not rise to the level of a 'material limitation ' "); *cf. Fiandaca v. Cunningham*, 827 F.2d 825, 828–31 (1st Cir.1987) (disqualifying counsel from representing two classes of plaintiffs because the representation interfered with settlement negotiations). However, it is certainly not unreasonable to think that conflicts between the paramedics and City counsel *could* arise, depending on the substance of the paramedics' testimony and on the role City counsel chooses to play during the discovery process. For instance, what if the statements given to City Counsel by the paramedics *do* tend to establish liability of the City or the officers? What then? Under these circumstances, City counsel should candidly disclose the potential hazards of common representation to Marlow and O'Leary. The paramedics will then be in a position to decide whether or not retaining City counsel is in their best interests. We base our decision both on the text of Rule 1.7 and on rulings in similar conflict-of-interest cases. *See* Rules of Professional Conduct for the Northern District of Illinois, Rule 1.7 cmt. ("Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question where there is reason to infer the lawyer has neglected that responsibility."); *Figueroa–Olmo v. Westinghouse Elec. Corp.*, 616 F.Supp. 1445, 1451, 1454–55 (D.P.R.1985) (holding that while no conflict presently existed, the plaintiff's counsel was still required under Rule 1.7 to disclose the potential for conflict and to obtain the clients' consent before continuing with multiple representation); *see also Galvin*, 663 F.Supp. at 1582 (requiring the defense counsel to file affidavits demonstrating client consent to common representation even though no actual conflict had emerged); *Clay*, 608 F.Supp. at 304 (de-

nying a motion to disqualify conditioned upon the filing of verified documents "establishing an adequate basis for defendants' informed consent").

## B. Ex Parte Interviews

▇ The plaintiff has also requested that her attorneys be permitted to interview Marlow and O'Leary outside the presence of City counsel. In opposition, City counsel contends that Rule 4.2 of the Rules of Professional Conduct for the Northern District precludes *ex parte* interviews with the paramedics. Rule 4.2 prohibits an attorney representing a client from communicating on the subject of the representation with a party the attorney knows to be represented by another lawyer. The first attorney may communicate with the represented party only after obtaining the consent of the opposing lawyer.[10] When an organization is involved, the Rule "prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." Rules of Professional Conduct for the Northern District of Illinois, Rule 4.2 cmt. The purposes of the rule are fourfold. Rule 4.2(1) prevents unprincipled attorneys from circumventing opposing counsel to obtain careless statements from adverse parties, (2) protects the integrity of the attorney-client relationship, (3) prevents the inadvertent disclosure of privileged information, and (4) facilitates settlement by channelling disputes through lawyers familiar with the negotiation process. *Kole v. Loyola Univ. of Chicago*, No. 95 C 1223, 1997 WL 47454, at *4 (N.D.Ill. Jan.30, 1997) (citing *Polycast Tech.*

---

10. Rule 4.2 provides in full:
 During the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter

unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law.

Rules of Professional Conduct for the Northern District of Illinois, Rule 4.2 (1995).

*Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 625 (S.D.N.Y.1990)).

■ Some background on the plaintiff's request to interview the paramedics *ex parte* is in order. The plaintiff filed her initial motion for disqualification on October 16, 1996. The motion requested that City counsel "not be permitted to represent paramedics witnesses Marlow and O'Leary at their depositions or as witnesses in this case." Plaintiffs' Motion at 1.[11] During a status hearing on October 23, 1996, the court and the parties discussed—without reaching any definite conclusions—(1) the possibility that the paramedics' statements might constitute "party admissions" by the City, and (2) whether the paramedics' ability to bind the City was even a relevant issue in light of the plaintiff's original motion. Following this discussion, the court granted the plaintiff's request for leave to file an amended motion. On November 7, 1996, the plaintiff filed a three-page supplemental memorandum that addressed the issue of whether the paramedics' statements might be admitted into evidence as admissions of the City. The memorandum did not amend the original motion by requesting additional forms of relief. Nor did the memorandum explain why the paramedics' ability to bind the City should be a dispositive issue. Plaintiffs' Supplemental Memorandum of Law in Support of Their Motion to Disallow Corporation Counsel's Common Representation of City of Chicago and Neutral City Employees Paramedics ("Plaintiffs' Supplemental Memorandum") at 1–3. The defendants filed their response to the plaintiff's motion on December 18, 1996. Not until February 5, 1997, in the plaintiff's reply to the defendants' response to the disqualification motion, did the plaintiff clearly express her desire to have her attorneys informally interview the paramedics. Plaintiffs' Reply to Defendant City's Response to Plaintiffs' Motion to Disallow Corporation Counsel's Common Representation ("Plaintiffs' Reply") at 1–4.

■ This procedural history may help explain why the plaintiff's request for *ex parte* interviews appears to be something of an afterthought—and why the plaintiff appears to have glossed over an important issue. A threshold question under both DR 5–105(B) and Rule 1.7 is whether an attorney-client relationship exists between City counsel and the paramedics. *See AVR, Inc. v. Cemstone Products Co.,* No. 3–92–551, 1993 WL 104933, at *1 (D.Minn. Mar.25, 1993) (stating Rules 1.7 and 1.9 are not implicated unless the party seeking disqualification shows that an attorney-client relationship existed); *Kabi Pharmacia AB v. Alcon Surgical, Inc.,* 803 F.Supp. 957, 961 (D.Del.1992) (noting that "the threshold question in determining the applicability of Rule 1.7(a) is whether an attorney-client relationship existed"); *see also* Rules of Professional Conduct for the Northern District of Illinois, Scope (1995) (commenting that most of the duties flowing from an attorney-client relationship attach "after the client has requested the lawyer to render legal services and the lawyer has agreed to do so"). Thus, the plaintiff could not have prevailed on her motion for disqualification unless she established (or at least assumed) that an attorney-client relationship existed between City counsel, the defendants, and the paramedics. One cannot disqualify a clientless attorney. Perhaps more importantly, City counsel has not opposed the plaintiff's motion on the ground that the paramedics are not its clients; quite to the contrary, City counsel openly claims that an attorney-client relationship with Marlow and O'Leary has been created. *See* Defendant's Response at 8 (commenting that "[t]he City attorneys have acted in the best interests of their clients, O'Leary and Marlow"); *see also id.* at 16 (arguing that prior communications between City counsel and the paramedics should be privileged); *id.* at 19 (asserting that Marlow and O'Leary "have elected to have counsel"). City counsel has also submitted affidavits indicating that the par-

---

**11.** After repeating this request for disqualification, the concluding paragraph of the plaintiff's motion also insisted that City counsel "be precluded from interfering in any way with plaintiffs' access to said witnesses." Plaintiffs' Motion at 6. However, the only "interference" discussed in the motion was City counsel's alleged intransigence in arranging the depositions of the paramedics. *Id.* ¶¶ 12–14, at 3–4; *see also supra* note 1. Nothing in the motion suggests that the plaintiff was, at that time, requesting *ex parte* interviews with the paramedics.

amedics wish to be represented in connection with their roles as witnesses.[12] Given the statements of City counsel and the two affidavits—and given the plaintiff's failure to address the issue—it appears that the paramedics have consulted with City counsel and that the paramedics have chosen City counsel to serve as their legal advisor.

The paramedics' status as "clients" of City counsel has some important implications for the plaintiff's request to conduct *ex parte* interviews. Rule 4.2 forbids an attorney from communicating with a "party" whom the attorney knows to be represented in the matter by another lawyer. When the defendant is an organization, the comment to Rule 4.2 indicates that three types of agents may be classified as "represented parties": managerial employees, employees whose acts may be imputed to the organization, and employees whose admissions may be binding on the organization. *Orlowski v. Dominick's Finer Foods, Inc.*, 937 F.Supp. 723, 728 (N.D.Ill. 1996) (Keys, Mag. J.) (citing *Breedlove v. Tele–Trip Co.*, No. 91 C 5702, 1992 WL 202147, at *1 (N.D.Ill. Aug.14, 1992)). In this case, the plaintiff argues that informal interviews are permissible for two reasons. First, the plaintiff argues that the statements of the paramedics cannot bind the City as party defendant. Plaintiffs' Supplemental Memorandum at 2–3. Second, the plaintiff argues that even if Marlow and O'Leary could bind the City, the plaintiff is willing to stipulate that any statements obtained from the paramedics during informal interviews will not be used as admissions at trial. Plaintiffs' Reply at 2–4. In support of these arguments, the plaintiff cites cases such as *Campbell v. Fasco Industries, Inc.*, 861 F.Supp. 1385, 1392–93 (N.D.Ill.1994) (holding that statements of two managers were not admissible against their employer because the statements did not concern matters with-

in the scope of their employment), and *B.H. by Monahan v. Johnson*, 128 F.R.D. 659, 662–63 (N.D.Ill.1989) (Grady, C.J.) (holding that the plaintiffs' attorneys could conduct *ex parte* interviews of government caseworkers but disallowing the use of the caseworkers' statements as party admissions).

However, once it has been established that an independent attorney-client relationship between City counsel and the paramedics exists, the decisions cited by the plaintiff are inapposite. Under Rule 4.2, the admissibility of an employee's statement as a "party admission" is relevant *only* for the purposes of determining whether or not the employee should be viewed as a "represented party." In addition, as we held in *B.H. by Monahan*, under some circumstances a court may allow *ex parte* interviews to occur despite the fact that the employees' statements might have binding effects on the defendant. But if a valid attorney-client relationship has already been created through other means, an analysis of whether an employee's statement constitutes a "party admission" that should be admitted into evidence becomes superfluous. Such is the case here. To reiterate, City counsel's submissions and the plaintiff's omissions indicate that an attorney-client relationship has arisen between the paramedics and the City's attorneys. We therefore hold that the plaintiff's attorneys may not interview Marlow and O'Leary *ex parte*.[13] We express no opinion as to whether the paramedics' statements should be treated as "party admissions" by the City.

### CONCLUSION

For the foregoing reasons, the plaintiff's motion to prevent the defendants' attorneys from representing the paramedics is denied without prejudice. City counsel is directed to file an affidavit by March 21, 1997, that the risks and advantages of common repre-

12. The parties' briefs do not reveal whether the paramedics approached City counsel or whether City counsel solicited the paramedics. Although this uncertainty is somewhat troubling, nothing submitted to the court thus far indicates that City counsel acted unethically by contacting the paramedics.

13. Again, we recognize that interviews would be more convenient for the plaintiff's attorneys than

depositions. However, the plaintiff has not demonstrated that the benefits of informal discovery in this case justify suspending the Rules of Professional Conduct. *See In re Air Crash Disaster Near Roselawn, Ind.*, 909 F.Supp. 1116, 1121 (N.D.Ill.1995) (observing that "Rule 4.2 unquestionably restricts a party's ability to conduct low cost, informal discovery").

sentation have been fully disclosed to Marlow and O'Leary and, that the witnesses want the City's attorneys to serve as their counsel. The plaintiff's request to conduct *ex parte* interviews with the paramedics is denied without prejudice.

